IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, GEORGIA, <br><br> Plaintiff, <br><br> vs. <br><br> 3M COMPANY, et al., <br><br> Defendants. | Case No.: 4:25-tc-05000 |

**PLAINTIFF'S EMERGENCY MOTION TO REMAND AND FOR EXPEDITED HEARING AND BRIEFING SCHEDULE**

COMES NOW, The Mayor and Aldermen of the City of Savannah, Georgia ("Savannah" or "Plaintiff") and respectfully submits this Emergency Motion to Remand and for Expediting Hearing and Briefing Schedule. As set forth herein and in Plaintiff's Memorandum of Law in Support, this matter is due to be remanded to the Superior Court of Chatham County, Georgia, where jurisdiction is proper. This motion is being filed pursuant to LR 7.7, and an expedited ruling is necessary in order to protect against significant delay and risks to public health if this case is tagged and transferred to multi-district litigation.

*Savannah's PFAS Problem*

1. The City of Savannah's drinking water is polluted with PFAS, a family of man-made chemicals that are persistent, bio-accumulative, and toxic. (Pl.'s Compl., ECF No. 1-1, ¶¶ 3, 13.)

2. Two types of PFAS—PFOS and PFOA—are considered "hazardous substances" by the EPA. *Id.* ¶ 183. And they are present in Savannah's drinking water at levels that the federal government has deemed unacceptable. *Id.* ¶ 199, 201.

1

3. The City of Savannah has no choice. It must remove PFAS from its drinking water in order to comply with federal regulations—not to mention to meet its obligations to its citizens as a supplier of safe and clean drinking water. *Id.* ¶ 13.

4. The problem is that conventional treatment systems—like Savannah's—cannot remove PFAS. *Id.* ¶ 14. The only way that Savannah can remove these "forever chemicals" from its water and comply with federal regulations is through costly, large-scale upgrades to its drinking water treatment systems. *Id.*

5. That is why Savannah initiated this lawsuit: to hold the polluters responsible for the pollution, rather than to pass that burden on to Savannah's ratepayers.

***3M's Response to Savannah's PFAS Problem***

6. 3M was the only known manufacturer of PFOS in the United States and one of the major manufacturers of PFOA—the two worst types of PFAS in Savannah's drinking water. *Id.* ¶¶ 118–19.

7. But rather than defend this case on its merits, 3M seeks to exploit the one thing that the City of Savannah cannot afford to lose: time.

8. 3M removed this case under the federal officer removal statute (28 U.S.C. § 1442), arguing that it produced aqueous film-forming foam ("AFFF")[1] in accordance with "reasonably precise" military specifications ("MilSpec") issued by the federal government. (3M Notice of Removal, ECF No. 1, ¶¶ 2–4, 49.)

---

[1] AFFF is not a type of PFAS. Rather, it is one of potentially thousands of different finished products that have historically contained PFAS as an ingredient or byproduct. The City of Savannah's lawsuit is focused on the use and discharge of PFAS in consumer products by private industry.

9. This removal is part of a nationwide strategy to create a judicial logjam for PFAS cases like these. The strategy goes like this:

- *First*, 3M removes the case to federal court under the federal officer removal statute, arguing that it produced AFFF pursuant to "reasonably precise" military specifications;

- *Second*, armed with its new AFFF "hook," 3M petitions the Judicial Panel for Multidistrict Litigation ("JPML") to transfer the now-removed case to the *In Re: Aqueous Film-Forming Foams Products Liability Litigation* Multi-District Litigation ("AFFF MDL") pending before Judge Richard Gergel in the United States District Court for the District of South Carolina;

- *Third*, 3M attempts to delay remand until the JPML transfers the case to the AFFF MDL (which can occur mere weeks after removal), thereby stripping this Court of any jurisdiction to hear Savannah's remand motion; and

- *Finally*, the JPML transfers the case to the AFFF MDL, where it falls into the back of a line of tens of thousands of cases—the functional equivalent of judicial purgatory.[2]

10. If successful, 3M's strategy could delay the City of Savannah's case by as much as a decade—and this is not hyperbole, but the estimate of the AFFF MDL Court itself. (*See* AFFF MDL Order, at 1 (Dec. 5, 2023), attached as **Exhibit A**) ("The Court predicted in the July 14, 2023 status conference that final disposition of the case of any party that elected to opt out could take up to a decade, which the Court continues to believe is a realistic estimate.").

11. During that time, Savannah cannot conduct discovery or even file motions on its own—every piece of litigation must go through class counsel overseeing the management of tens of thousands of lawsuits.

12. Meanwhile, Savannah must act <u>now</u> in order to remove PFOS and PFOA from its drinking water and comply with federal regulations. As 3M's own PFAS remediation consultant,

---

[2] The AFFF MDL has been in existence for more than six (6) years, and in the last year alone, nearly 8,000 individual cases were transferred to or filed in the AFFF MDL.

3

Arcadis, has recognized, time is of the essence for public water systems to comply with EPA's new drinking water regulations:

> [I]t is inevitable that many utilities will be unpleasantly surprised to identify the presence of PFAS contamination in their water supplies. . . . many of the water systems that identify PFAS will be required to remove these contaminants from distributed supplies. . . . **[P]rogressing quickly to design and construction is important to ensure timely compliance with federal regulations and remove PFAS as expediently as possible**. . . . [T]he number of systems requiring treatment may create high demand for both equipment and contracting services, potentially resulting in delays that could comprise scheduling . This same competition is likely to escalate costs.

(Arcadis, The Presence of PFAS, at 1–3 (Oct. 25, 2023), attached as **Exhibit B**) (emphasis added). 3M's strategy, if successful, makes that mission nearly impossible.

13. Yet, even if Savannah *did* have the time and resources to endure all of the delay inherent to multi-district litigation, there is still no light at the end of the tunnel for Savannah in the AFFF MDL: the City already opted out of 3M's nationwide class settlement with water authorities entered and approved by the AFFF MDL Court. (Pl.'s Compl., ECF No. 1-1, ¶¶ 23–25.)

14. In other words, 3M's strategy of removal and transfer would force Savannah into a judicial quagmire that, even after years of unnecessary and costly delay, would effectively result in dragging Savannah back to a settlement that it already opted out of.

### *The Solution to Savannah's PFAS Problem*

15. Fortunately, there are simple grounds for remand that can prevent 3M's strategy from becoming a reality.

16. *First*, 3M's "MilSpec AFFF" argument fails under clear Eleventh Circuit case law because it is factually irrelevant.

4

17. Factually, 3M's removal is based on its unilateral assertion that MilSpec AFFF allegedly used at and discharged from the Fort Gordon Military Reservation in Augusta, Georgia, the Augusta Regional Airport, and/or the Savannah International Airport, are at least partially responsible for the PFOS and PFOA contaminating Savannah's drinking water. (*See* 3M Notice of Removal, ECF No. 1, ¶¶ 30–33.)

18. Notably, 3M offers no evidence that it even supplied AFFF used at these locations. *See generally id.*

19. But the bigger problem for 3M is that this case simply has nothing to do with AFFF (MilSpec or otherwise); it is about the manufacture, sale, use, and discharge of commercial PFAS in private industry. (Pl.'s Compl., ECF No. 1-1, ¶ 1.)

20. Under Eleventh Circuit precedent, this is a death knell for 3M's removal—which may explain why 3M's Notice of Removal makes only a single citation in passing to Eleventh Circuit case law. (*See* 3M Notice of Removal, ECF No. 1, ¶ 21) (citing *Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017)).

21. But what *Caver* and related Eleventh Circuit precedent hold is that, in order to establish federal officer removal, the removing party "must show that it performed **the actions for which it is being sued** under color of federal office." *See Caver*, 845 F.3d at 1142 (emphasis added). Put another way, "the 'act' anchoring removal must be defined by the 'claim' brought against the defendant," so 3M's "removal theory must accord with a claim . . . brought against [it]." *See State v. Meadows*, 88 F.4th 1331, 1344 (11th Cir. 2023).

22. To make this determination of the "the 'act' anchoring removal," the Eleventh Circuit instructs courts to look to the "heart" or "gravamen" of the plaintiff's claims. *Id.* at 1344–45. Indeed, "[t]o allow [a defendant] to remove the action if any *single* allegation . . . related to his

5

official duties would run contrary to both the removal statute and precedent." *Id.* at 1345 (emphasis in original).

23. 3M, simply ignoring this case law and paying little heed to the factual allegations of Savannah's complaint, instead invites this Court to merely "credit Defendants' theory of the case," citing First, Second, and Fourth Circuit decisions in support. (*See* 3M Notice of Removal, ECF No. 1, ¶ 45) (citing *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008); *Maryland v. 3M Co.*, 2025 WL 727831 (4th Cir. Mar. 7, 2025)).

24. Those cases, in turn, cite to a Supreme Court decision in support of their "credit the Defendant's theory" proclamations: *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999).

25. 3M does not mention in its Notice of Removal that—less than two years ago—the Eleventh Circuit interpreted *Acker*'s "credit Defendant's theory of the case" language in a federal officer removal case.

26. In *Meadows*, the defendant urged the Eleventh Circuit to "accept his assertions at face value under *Acker*. . . . and accept his 'theory of the case,'" much like 3M does in this case. *See Meadows*, 88 F.4th at 1346 (quoting *Acker*, 527 U.S. at 432). However, as the *Meadows* court explained, "*Acker* credited two judicial officers' 'adequate threshold showing' on a question of **statutory interpretation**. The Supreme Court **credited the judges' 'theory of the case' when it declined to 'choose between [disputed] readings' of a municipal ordinance**, but **that deference involved crediting a *plausible* reading of a *specific* legal authority**. *Id.* (emphasis added)

27. In other words, *Acker*'s holding is limited to crediting a defendant's plausible *legal* theory, not an unsupported *factual* theory. And neither *Acker* nor *Meadows* require, much less

permit, a court to simply "rubber stamp," "blindly [] accept," or "accept . . . at face value" a defendant's *factual* theory of removal. *Id.*

28. To the contrary, 3M must present "competent proof" and "sufficient evidence" in support of its "factual averments" of removal jurisdiction. *Id.* at 1348.

29. A court in this circuit recently had occasion to apply *Caver* and *Meadows* to facts nearly identical to this case. *Town of Pine Hill, Alabama v. 3M Co., et al.*, No. CV 2:24-00284-KD-N, 2025 WL 733100 (S.D. Ala. Feb. 14, 2025), *report and recommendation adopted*, No. CV 2:24-00284-KD-N, 2025 WL 728461 (S.D. Ala. Mar. 6, 2025).

30. There, as here, 3M attempted to remove a local government's lawsuit alleging PFAS contamination of drinking water by private industry based on 3M's unilateral assertion that it also manufactured MilSpec AFFF. *Id.* at *3.

31. The *Pine Hill* court rejected this argument, holding that "3M's manufacture for and supplying of AFFF to the U.S. military are not at the 'heart' of Pine Hill's claims against 3M" and "are not 'actions for which [3M] is being sued.'" *Id.* at *5 (quoting *Caver* and *Meadows*). In other words, "because none of Pine Hill's claims against [3M were] premised on the design, manufacture, or sale of AFFF to the U.S. military," 3M was "not . . . entitled to removal under § 1442(a)(1)." *Id.* at *3.

32. Here is no different. The "heart" and "gravamen" of Savannah's claims against 3M is its manufacture and sale of commercial PFAS to private industries in Georgia and South Carolina. (Pl.'s Compl., ECF No. 1-1, ¶¶ 1–12.) AFFF has nothing to do with this, and 3M's alleged manufacture and sale of AFFF to the U.S. military is not an "action[] for which it is being sued" in this case. *See id.* ¶¶ 20–22.

33. Therefore, because 3M's factual basis for removal—MilSpec AFFF—is not relevant to Savannah's claims (much less the "heart" of Savannah's claims), 3M cannot remove on the basis of MilSpec AFFF. *See Pine Hill*, 2025 WL 733100 at *5 ("Because 3M has not shown that it performed 'the actions for which it is being sued under color of federal office,' the undersigned finds that 3M is not entitled to federal-officer removal in this action.").

34. *Second*, even if AFFF was *factually* relevant to this case, Savannah has made AFFF *legally* irrelevant by explicitly disclaiming any causes of action it could have asserted arising out of AFFF. (*See* Pl.'s Compl., ECF No. 1-1, ¶¶ 20–22.)

35. Federal courts recognize that an "express disclaimer" that "explicitly renounce[s] claims upon which federal officer removal was based" are sufficient "[t]o defeat removal." *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (cleaned up).

36. In particular, federal officer removal is not proper when "a plaintiff . . . disclaims any claims that arise from a location owned and operated by the federal government . . . then sues a defendant for the defendant's conduct on private property divorced from the work that it performed for a federal officer." *Id.*

37. That is exactly what Savannah did in its Complaint. (*See* Pl.'s Compl., ECF No. 1-1, ¶ 22) ("Plaintiff expressly disclaims any potential claims arguably arising from any federal enclaves, including any military installations or other locations that may have used AFFF pursuant to military specifications. This case is brought against the Defendants solely in their capacities as private manufacturers and users of PFAS.").

38. Even in the specific context of PFAS contamination lawsuits, numerous federal courts have remanded to state court on the grounds that an express disclaimer of AFFF will defeat federal officer jurisdiction:

- *Young v. Tyco Fire Prods., LP*, No. 21-15912, 2022 WL 486632, at *2 (9th Cir. Feb. 17, 2022) (holding that AFFF manufacturer could not remove to federal court under federal officer theory merely because it "propose[d] an alternative theory of causation that the [plaintiffs] have expressly disavowed");

- *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 220 (D.N.H. 2023) (granting motion to remand because plaintiff "disclaimed in this suit recovery for harm from AFFF contamination, which eliminates any connection between the State's claims in this suit and 3M's production of MilSpec AFFF");

- *Illinois ex rel. Raoul v. 3M Co.*, 693 F. Supp. 3d 948, 957 (C.D. Ill. 2023), *aff'd sub nom. People ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024) ("[C]ourts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based.");

- *Connecticut v. EIDP, Inc.*, No. 3:24-CV-239 (SRU), 2024 WL 5135601, at *4 (D. Conn. Dec. 17, 2024) (granting remand to state court where plaintiff "specifically and unambiguously disclaims the claims—for PFAS contamination from AFFF—upon which federal officer removal is based");

- *Maine v. 3M Co.*, No. 2:23-CV-00210-JAW, 2023 WL 4758816 (D. Me. July 26, 2023) (granting remand motion based on explicit disclaimer of AFFF); and

- *Grosch v. Tyco Fire Prods. LP*, No. CV-23-01259-PHX-DWL, 2023 WL 5993548, at *5 (D. Ariz. Sept. 15, 2023) (granting remand where plaintiff "expressly disavowed any claim for relief premised on exposure to MilSpec AFFF").[3]

---

[3] In addition, the AFFF MDL Court itself remanded the State of South Carolina's PFAS contamination lawsuit against 3M on the basis of the State's AFFF disclaimer. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2024 WL 1470056 (D.S.C. Feb. 29, 2024). The District of Maryland did the same in the State's own PFAS case against 3M. *Maryland v. 3M Co.*, No. CV RDB-23-1836, 2024 WL 1152568 (D. Md. Feb. 12, 2024). Savannah recognizes that the Fourth Circuit recently vacated these remand orders, holding that the States' disclaimers were merely "artful pleading" and not dispositive for purposes of removal jurisdiction. *See Maryland v. 3M Co.*, No. 24-1218, 2025 WL 727831 (4th Cir. Mar. 7, 2025). As discussed in more detail in Savannah's Memorandum Brief in Support of Remand, there are critical factors that distinguish this case from the Fourth Circuit's decision in *Maryland*, including the fact that both states brought parallel lawsuits explicitly seeking recovery for AFFF-related damages to the same natural resources that the states were seeking to remediate in their *non*-AFFF lawsuits. *See id.* at *2–3. But more importantly, *Maryland* is not binding on this Court, and the Fourth Circuit's ruling is at odds with binding Eleventh Circuit precedent requiring courts to look to the "*heart*" or "*gravamen*" of the plaintiff's claims in order to determine if the removing party "performed the *actions for which it is being sued* under color of federal office." *See Meadows*, 88 F.4th at 1344–45; *Caver*, 845 F.3d at 1142 (emphasis added); *see also Pine Hill*, 2025 WL 733100, at *3, *5

39.   *Finally*, even if it was factually and legally relevant, 3M's "MilSpec AFFF" argument is also just glaringly incorrect.

40.   3M's entire factual basis for removal—that it manufactured AFFF "in accordance with rigorous military specifications"—is simply false. The AFFF MDL Court—where 3M wants to send this case—ruled over two years ago "**as a matter of law** that the AFFF MilSpec is not a reasonably precise specification under the first prong of *Boyle*." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *8 (D.S.C. Sept. 16, 2022) (emphasis added).

41.   As a matter of fact, 3M's removal pleadings make several factual representations that are directly at odds with the AFFF MDL Court's prior factual findings:

| **3M's Factual Misrepresentations (2025)** | **AFFF MDL Court's Prior Rulings (2022)** |
|---|---|
| "Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere 'rubber stamping.' It created (and has updated) detailed specifications . . . **Those specifications are 'reasonably precise,' including in requiring the use of PFAS**." (3M Notice of Removal, ECF No. 1, ¶ 49) (emphasis added). | "[T]he Court finds **as a matter of law** that the **AFFF MilSpec is not a reasonably precise specification** . . . ." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *8 (emphasis added). |
| "3M's use of **PFAS in MilSpec AFFF was required** by military specifications." *Id.* ¶ 54. | "The MilSpec . . . **plainly does not require** PFOA, PFOS or any other C8-based chemistry." *Id.* at *7. |
| "Plaintiffs are seeking to use state tort law to attack **design choices dictated by the military**." *Id.* | "The Court finds that the **MilSpec did not specify the use of a particular formula** or the use of C8 chemistry." *Id.* at *6. |

---

("Even without the express AFFF disclaimer, however, 3M would still not be entitled to removal under § 1442(a)(1) because none of Pine Hill's claims against it is premised on the design, manufacture, or sale of AFFF to the U.S. military. . . . At the very least, the fact that the complaint expressly disclaims any damages or cause of action based on PFAS-containing AFFF lends further support to the determination that 3M's manufacture for and supplying of AFFF to the U.S. military are not at the 'heart' of Pine Hill's claims against 3M.").

42. Even setting aside 3M's blatant misrepresentation of the findings of the AFFF MDL Court, the fact that the "AFFF MilSpec is not a reasonably precise specification"—"*as a matter of law*"—kills 3M's removal bid.

43. This is because a defendant who fails to show that the government provided "reasonably precise specifications" cannot establish the elements necessary for federal officer removal.[4]

44. In short, 3M cannot establish the requisite elements of federal officer removal because the AFFF MilSpec was not "reasonably precise" as a matter of law.

### *Savannah's Emergency Request for Expedited Review*

45. The reasons why this case should be remanded are straightforward. They have been briefed extensively by 3M in other cases and considered in depth by numerous other judges. In short, 3M will not be prejudiced by an expedited briefing schedule and hearing.

---

[4] *See Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 726 (9th Cir. 2015) (upholding trial court's remand of case to state court where defendant could not meet the elements of federal officer removal because it "was unable to identify any precise specifications" from the federal government); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 428 F. Supp. 2d 1014, 1018 (D. Minn. 2006) (finding defendant did not meet elements of federal officer removal jurisdiction because federal government "did not exercise control over [defendant's] design, manufacture, or sale of the [product] at issue"); *Williams v. Gen. Elec. Co.*, 418 F. Supp. 2d 610, 616 (M.D. Pa. 2005) (remanding action to state court where Navy did not "provide[] precise specifications" to the defendant); *Viscosi v. Am. Optical Corp.*, No. CIV.A.307CV1559SRU, 2008 WL 4426884, at *5 (D. Conn. Sept. 29, 2008) ("[I]f the government did not issue reasonably precise specifications ... then the plaintiffs' harms were not caused by the defendants' contractual responsibilities" for purposes of federal officer removal); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 203 (D. Mass. 2008) ("[H]aving concluded that the defendants have not shown reasonably precise specifications as to the warnings, the Court also finds that the defendants have not shown a causal nexus" necessary for federal officer removal.); *Barrett v. CLA-VAL Co.*, No. CV077774PSGFFMX, 2008 WL 11422175, at *3 (C.D. Cal. Feb. 5, 2008) (same); *State v. Monsanto Co.*, 274 F. Supp. 3d 1125, 1130 (W.D. Wash. 2017) (granting remand in PCB pollution case after finding that "PCBs were *mentioned in* a government specification, not *produced to* government specification"); *Glein v. Boeing Co.*, No. 10-452-GPM, 2010 WL 2608284, at *3 (S.D. Ill. June 25, 2010) (remanding to state court where no evidence that federal government "approved reasonably precise specifications").

46. On the other hand, the City of Savannah will face great prejudice if, as 3M hopes, it can put off a hearing on Savannah's Motion to Remand until the JPML takes up the issue of transfer. If transferred to the AFFF MDL, Savannah's delay would be measured not in weeks or months, but in years.

47. As a result, Savannah respectfully requests that the Court enter an expedited briefing schedule on Savannah's Emergency Motion to Remand.

48. In particular, Savannah respectfully requests that Defendants' Response(s) in Opposition to Savannah's Motion to Remand be due within **ten (10) days**, and Savannah's Reply in Support of Motion to Remand, if necessary, due within **two (2) days** thereafter.

49. Upon the conclusion of briefing, Savannah respectfully requests that the Court set an emergency hearing on Savannah's Motion to Remand at the Court's earliest convenience.

Respectfully submitted this 17th day of March, 2025.

**OFFICE OF THE CITY ATTORNEY**

2 East Bay Street
City Hall, 3rd Floor GA 30161
Savannah, GA 31401
Phone: 912-525-3131
blovett@savannahga.gov

 /s/ R. Bates Lovett
R. BATES LOVETT
Georgia Bar No. 459568
**Counsel for Plaintiff**

**HARRIS LOWRY MANTON LLP**

410 East Broughton Street
Savannah, Georgia 31401
Telephone: (912) 651-9967
Facsimile: (912) 651-1276
jeff@hlmlawfirm.com
steve@hlmlawfirm.com
jed@hlmlawfirm.com
molly@hlmlawfirm.com
cdonahue@hlmlawfirm.com

 /s/ Jeffrey R. Harris
JEFFREY R. HARRIS
Georgia Bar No. 330315
STEPHEN G. LOWRY
Georgia Bar No. 460289
JED D. MANTON
Georgia Bar No. 868587
MADELINE E. MCNEELEY
Georgia Bar No. 460652
COLE F. DONAHUE
Georgia Bar No. 632966

|  |  |
|---|---|
|  | **Counsel for Plaintiff** |
|  |  |
|  | **FRANKLIN LAW LLC** |
| 2919 River Drive | */s/ Rebecca Franklin Harris* |
| Thunderbolt, Georgia 31404 | REBECCA FRANKLIN HARRIS |
| Phone: 912-335-3305 | Georgia Bar No. 141350 |
| rebecca@franklinlawllc.com | **Counsel for Plaintiff** |
|  |  |
|  | **FRIEDMAN, DAZZIO & ZULANAS, P.C.** |
| 3800 Corporate Woods Drive | */s/ Matt Conn* |
| Birmingham, AL 35242 | JEFF FRIEDMAN |
| Phone: 205-278-7000 | MATT CONN |
| jfriedman@friedman-lawyers.com | MADISON GITSCHIER |
| mconn@friedman-lawyers.com | ETHAN WRIGHT |
| mgitschier@friedman-lawyers.com | **Counsel for Plaintiff** |
| ewright@friedman-lawyers.com | *(Admitted Pro Hac Vice)* |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 17, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to all counsel of record.