**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| THE MAYOR AND ALDERMEN | ) | |
| OF THE CITY OF SAVANNAH, | ) | |
| GEORGIA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:25-tc-05000 |
| | ) | |
| vs. | ) | |
| | ) | |
| 3M COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**EMERGENCY MOTION TO REMAND**

The Mayor and Aldermen of the City of Savannah, Georgia ("Savannah" or "Plaintiff") respectfully moves this Honorable Court to remand this case to where jurisdiction is proper: the Superior Court of Chatham County, Georgia. Remand is necessary because 3M's argument for removal is (1) factually irrelevant to Savannah's claims, (2) legally irrelevant based upon Savannah's explicit disclaimer, and (3) incorrect as a matter of law. 3M's same arguments for removal have been rejected by numerous other courts and are little more than a stepping stone to 3M's true goal: transfer of this case to a sprawling multi-district litigation that would ensure years of delay to this lawsuit. As grounds for remand, Savannah sets forth and states as follows:

## I.   INTRODUCTION

The City of Savannah's drinking water is polluted with PFAS, a family of man-made chemicals that are persistent, bio-accumulative, and toxic. PFAS manufactured by 3M and others was sold to various industries in Georgia and South Carolina that, in turn, discharged PFAS-polluted wastewater into the Savannah River upstream of Savannah's drinking water intakes.

Now, through no fault of its own, Savannah must take steps to remove these contaminants from its drinking water and meet binding regulations set by the United States Environmental Protection Division ("EPA"). Doing so requires the installation of sophisticated treatment technology at a very significant cost, and Savannah does not wish to pass these expenses on to its customers. As a result, Savannah filed suit against 3M and others in order to recover PFAS-related expenses and lower or eliminate the PFAS remediation cost to its customers.

3M has now removed this case under the federal officer removal statute, 28 U.S.C. § 1442. 3M's argument for federal officer removal revolves around the purported use of 3M's Aqueous film-forming foam ("AFFF") at airports and military installations not referenced in the Complaint.

AFFF is not a type of PFAS. It is simply one of potentially thousands of different products that have historically contained PFAS. 3M claims that, prior to 2002, it manufactured some AFFF pursuant to "reasonably precise" military specifications ("MilSpec") set by the United States Military.  (See 3M Notice of Removal, ECF No. 1, ¶¶ 28, 49.) 3M then claims that this "MilSpec AFFF" was used at and discharged from the Fort Gordon Military Reservation in Augusta, Georgia, the Augusta Regional Airport, and/or the Savannah International Airport. *Id.* ¶¶ 30–33. 3M then asserts that discharges of "MilSpec AFFF" from these installations are at least partially responsible for the PFOS and PFOA contaminating Savannah's drinking water. *Id.* Notably, 3M offers no evidence that it even supplied AFFF used at these locations.

First, despite 3M's best efforts, this case has nothing to do with AFFF, "MilSpec" or otherwise. Rather, the "heart" of Savannah's claims against 3M is that it sold PFAS-containing products—products that have nothing do with AFFF—to a number of private industries in and around Savannah, including carpet, textiles, paper, metal plating and finishing, electronics, and more, which in turn discharged their PFAS-contaminated waste upstream of Savannah's drinking

water intake. Simply put, 3M's hook for removal—its alleged manufacture of AFFF for the U.S. military—is not why 3M is being sued in this case. And under Eleventh Circuit precedent, that factual disconnect precludes 3M from establishing federal officer removal.[1]

Second, even if MilSpec AFFF could be *factually* relevant to this case, Savannah has rendered it *legally* irrelevant by explicitly disclaiming any claims or damages relating to AFFF in its Complaint. As other courts have recognized, such an explicit disclaimer of AFFF defeats federal officer removal. Savannah's case is due to be remanded on the same grounds.

Finally, even if 3M could make AFFF both factually and legally relevant to this lawsuit— effectively re-writing Savannah's claims against it and overriding Savannah's own disclaimer that it will not seek any recovery based on AFFF—3M's argument for removal is still built on a false premise. 3M claims that it manufactured AFFF pursuant to "reasonably precise specifications" from the military, but the very court that 3M wishes to transfer this case to found over two years ago that, "*as a matter of law*," there was *not* a "reasonably precise specification" for 3M's MilSpec AFFF. Because of this, 3M cannot make out *any* of the elements for federal officer removal, and this case is due to be summarily remanded.

## II. FACTUAL BACKGROUND

### A. What This Case is About

This case is about PFAS. Specifically, it is about 3M's manufacture of PFAS, which 3M knew for decades were persistent, bioaccumulative, and toxic, and its subsequent sale of those compounds to a number of private industries in Georgia and South Carolina, including carpet,

---

[1] As explained in more detail below, 3M's invitation for this Court to simply "credit" its factual theory runs contrary to Eleventh Circuit precedent.

textiles, paper, metal plating and finishing, electronics, and more. (Pl.'s Compl., ECF No. 1-1, ¶ 2.)

Savannah owns and operates a surface water treatment system that provides drinking water to the citizens of Savannah, Chatham County, and Effingham County, Georgia. *Id.* ¶ 27. Savannah's drinking water intake is located downstream from many of the private industries that have used 3M's PFAS in their own manufacturing processes and discharged the same via wastewater, stormwater, and other releases. *Id.* ¶¶ 9–11. In short, the Defendants' manufacturing operations, including the manufacturing, sale, use and/or discharge of PFAS, have contaminated Savannah's drinking water sources with PFAS well beyond the current EPA drinking water standards. *Id.* ¶¶ 8–14.

Importantly, conventional drinking water systems, like Savannah's, are incapable of removing these "forever chemicals" from drinking water. *Id.* ¶¶ 14, 28. Therefore, Savannah must install and operate a sophisticated—and costly—new treatment system in order to remove Defendants' PFAS from its source water and comply with EPA's drinking water regulations. *Id.* That is why Savannah filed this case.

### B. What This Case is <u>Not</u> About

This case is not about AFFF. The very first paragraph of Savannah's Complaint makes this clear:

> This case arises out of the manufacture, sale, use, and discharge of per- and poly-fluoroalkyl substances ("PFAS") in commercial applications. **This case does not arise out of the use or discharge of Aqueous Film-Forming Foam ("AFFF") or any products used by, supplied to, or manufactured to the specifications of the federal government**."

(Pl.'s Compl., ECF No. 1-1, ¶ 1.)

AFFF is not a type of PFAS. Rather, it is simply one of potentially thousands of different end products that have historically contained PFAS as one of many different ingredients. While 3M used to manufacture AFFF (along with many other PFAS-containing products), it has not manufactured *any* since at least 2002. (Status Report on Environmental Concerns Related to Aqueous Film-Forming Foam (AFFF), at 3M_AL_GA_00217380, attached as **Exhibit A**.) And even when 3M did manufacture AFFF, it accounted for less than 1% of its overall PFOS-related product sales. (Sulfonated Perfluorochemical Release Estimation, at 3M_AFFF_MDL00019219, attached as **Exhibit B**.)

Some AFFF is used commercially, including by private industry and local fire departments. Some AFFF has been used by the federal government, including at military bases. But no AFFF is relevant to Savannah's claims. Savannah affirmatively alleged that, "[u]pon information, belief, and preliminary investigation, the PFAS currently contaminating Plaintiff's source and drinking water is from industrial sources and is not the result of any AFFF manufactured pursuant to military specifications." *Id.* ¶ 21. And even if this case *could* involve claims or damages related to AFFF, Savannah explicitly disclaimed them:

> Plaintiff expressly disclaims any cause of action or damages arising from or associated with AFFF manufacture, sale, use or disposal by the named Defendants, or by any unnamed defendant or entities, including any legal or factual claim based on alleged "Mil Spec AFFF." Plaintiff expressly disclaims any potential claims arguably arising from any federal enclaves, including any military installations or other locations that may have used AFFF pursuant to military specifications. This case is brought against the Defendants solely in their capacities as private manufacturers and users of PFAS.

*Id.* ¶ 22. AFFF has nothing to do with this case.

### C. What 3M Wants to Make This Case About

3M wants this case to be about AFFF. On March 14, 2025, 3M filed its Notice of Removal, arguing that it is entitled to federal officer removal because it produced AFFF in accordance with

"reasonably precise" military specifications ("MilSpec") from the United States Military. (3M Notice of Removal, ECF No. 1, ¶¶ 2–4, 49.) According to 3M—and despite the fact that Savannah is not suing over AFFF and, in fact, explicitly *disclaimed* relief related to AFFF—"MilSpec AFFF" used at the Fort Gordon Military Reservation in Augusta, Georgia, the Augusta Regional Airport, and/or the Savannah International Airport are at least partially responsible for the PFAS contaminating Savannah's drinking water. *Id.* ¶¶ 30–33.

The reason why 3M wants to inject AFFF into a case that has nothing to do with AFFF is very simple: it gives 3M an opportunity to seek transfer of this case to the sprawling *In Re: Aqueous Film-Forming Foams Products Liability Litigation* Multi-District Litigation ("AFFF MDL") pending before Judge Richard Gergel in the United States District Court for the District of South Carolina. That MDL contains tens of thousands of pending cases, and transfer would place Savannah's case neatly into the back of the line, ensuring years of delay for this case.

Yet, Savannah already had an opportunity to join in a nationwide class action settlement with 3M that was entered in the AFFF MDL, but validly exercised its right to opt out of that settlement and seek its own relief in an individual suit against 3M. (Pl.'s Compl., ECF No. 1-1, ¶¶ 23–25.) That is why Savannah brought this case.

3M's attempt to make this case about AFFF is, in reality, an attempt to drag Savannah to the AFFF MDL, force it to wait years while the court resolves the next round of bellwether cases, and finally strongarm the City back to a settlement that it already opted out of.

### III. LEGAL STANDARD

District Courts of the United States are "courts of limited jurisdiction" and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 54, 552 (2005) (internal citation omitted).

To establish that federal officer removal is proper in this case, 3M must show (1) that it was a "person . . . who ***acted under*** a federal officer," (2) "that it performed the ***actions for which it is being sued*** under ***color of federal office***," which in turn requires 3M to "show a ***causal connection*** between what it has done under asserted official authority and the action against it," and (3) that 3M can "raise a ***colorable federal defense***." *See Doe v. Effingham Health Sys. Found., Inc.*, No. 4:23-CV-287, 2024 WL 3461063, at *3 (S.D. Ga. July 17, 2024) (emphasis added).

Under the third prong, a "colorable federal defense," 3M claims that it is has a "colorable" federal government contractor defense under *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988)). That defense exists only "where (1) the federal government approved ***reasonably precise specifications***, (2) the manufactured equipment ***conformed to the government's specifications***, and (3) the contractor ***warned the federal government*** about the equipment dangers that were unknown to the government." *Boyle*, 487 U.S. at 512 (emphasis added).

## IV. LEGAL ARGUMENT

3M's removal under the federal officer removal statute is based on an irrelevant and incorrect "MilSpec AFFF" argument.

First, 3M's invitation for this Court to simply "credit" its factual "theory of the case" is not the law in the Eleventh Circuit. *State v. Meadows*, 88 F.4th 1331, 1346 (11th Cir. 2023). Rather, since 3M's removal is based on its manufacture of MilSpec AFFF, but Savannah is not suing 3M over its manufacture of MilSpec AFFF, 3M has failed to "show that it performed ***the actions for which it is being sued*** under color of federal office." *See Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (emphasis added). Likewise, because the "heart" or "gravamen" of Savannah's claims in this case are 3M's manufacture and sale of commercial PFAS to private industry, 3M's removal on the basis of MilSpec AFFF is simply irrelevant. *See Meadows*, 88 F.4th

at 1344. As such, 3M's unilateral attempt to make this case about MilSpec AFFF is not enough to warrant federal officer removal. *See Town of Pine Hill, Alabama v. 3M Co., et al.*, No. CV 2:24-00284-KD-N, 2025 WL 733100, at *3 (S.D. Ala. Feb. 14, 2025), *report and recommendation adopted*, No. CV 2:24-00284-KD-N, 2025 WL 728461 (S.D. Ala. Mar. 6, 2025) (citing *Caver* and *Meadows* and holding that 3M was "not . . . entitled to removal under § 1442(a)(1) because none of Pine Hill's claims against [3M were] premised on the design, manufacture, or sale of AFFF to the U.S. military").

Second, making even more clear that this case is *not* about AFFF, Savannah's Complaint explicitly disclaimed any relief otherwise related to AFFF. (Pl.'s Compl., ECF No. 1-1, ¶¶ 20–22.) When a plaintiff "explicitly renounces claims upon which federal officer removal was based," the case should be remanded to state court. *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024). This is particularly true where "a plaintiff . . . disclaims any claims that arise from a location owned and operated by the federal government . . . then sues a defendant for the defendant's conduct on private property divorced from the work that it performed for a federal officer." *Id.* Because Savannah did just that in its Complaint, 3M's purported federal contractor defense is mooted and this case should be remanded to state court.

Finally, even assuming that 3M could re-write Savannah's claims against it and cast aside Savannah's explicit disclaimer, 3M still cannot meet its burden for removal. The court overseeing the sprawling *In Re: Aqueous Film-Forming Foams Products Liability Litigation* Multi-District Litigation ("AFFF MDL") already concluded, "*as a matter of law*," that 3M did not manufacture AFFF pursuant to a "reasonably precise specification" from the federal government. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at

*8 (D.S.C. Sept. 16, 2022). Because of this factual finding, 3M cannot meet the elements of federal officer removal, and this case should be summarily remanded.

### A. Remand is Required Because "MilSpec AFFF" is Not the "Heart" or "Gravamen" of Savannah's Lawsuit.

In order to establish federal officer removal, 3M "must show that it performed ***the actions for which it is being sued*** under color of federal office." *See Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (emphasis added). Put another way, "the 'act' anchoring removal must be defined by the 'claim' brought against the defendant," so 3M's "removal theory must accord with a claim . . . brought against [it]." *See State v. Meadows*, 88 F.4th 1331, 1344 (11th Cir. 2023).

To determine "the 'act' anchoring removal," courts need not "accept [a defendant's] assertions at face value" or "blindly [] accept" a defendant's theory of the case. *Id.* at 1346. Indeed, "[t]o allow [a defendant] to remove the action if any *single* allegation . . . related to his official duties would run contrary to both the removal statute and precedent." *Id.* at 1345. Rather, the Eleventh Circuit instructs courts to look to the "***heart***" or "***gravamen***" of the plaintiff's claims for purposes of determining "the 'act' anchoring removal." *Id.* at 1344–45 (emphasis added).

3M ignores this case law and instead invites this Court to merely "credit Defendants' theory of the case," citing First, Second, and Fourth Circuit decisions in support. (*See* 3M Notice of Removal, ECF No. 1, ¶ 45) (citing *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008); *Maryland v. 3M Co.*, 2025 WL 727831 (4th Cir. Mar. 7, 2025)). Those cases, in turn, cite to a Supreme Court decision in support of their "credit the Defendant's theory" proclamations: *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999).

However, 3M's Notice of Removal omits that—less than two years ago—the Eleventh Circuit interpreted *Acker*'s holding in a federal officer removal case. In *Meadows*, the defendant urged the Eleventh Circuit to "accept his assertions at face value under *Acker*. . . . and accept his 'theory of the case,'" much like 3M does in this case. *See Meadows*, 88 F.4th at 1346 (quoting Acker, 527 U.S. at 432). However, as the Eleventh Circuit explained, "*Acker* credited two judicial officers' 'adequate threshold showing' on a ***question of statutory interpretation***. The Supreme Court credited the judges' 'theory of the case' when it declined to 'choose between [disputed] readings' of a municipal ordinance, but that ***deference involved crediting a plausible reading of a specific legal authority***. *Id.* (emphasis added)

Simply put, *Acker*'s holding "crediting" the defendant's "theory of the case" is limited to crediting a defendant's plausible *legal* theory, not an unsupported *factual* theory. And neither *Acker* nor *Meadows* require, much less permit, a court to simply "rubber stamp," "blindly []" accept," or "accept . . . at face value" a defendant's factual theory of removal. *Id.* To the contrary, a removing defendant must present "competent proof" and "sufficient evidence" in support of its "factual averments" of removal jurisdiction. *Id.* at 1348.

Here, 3M wants the Court to look past the "heart" and "gravamen" of Savannah's claims, and simply "credit" 3M's factual theories over Savannah's factual allegations that are directly to the contrary. *Compare* 3M Notice of Removal, ECF No. 1, ¶ 2 ("[T]he purported PFAS contamination of Plaintiff's water supply just as plausibly resulted (at least in part) from MilSpec AFFF . . ."), *with* Pl.'s Compl., ECF No. 1-1, ¶ 21 ("Upon information, belief, and preliminary investigation, the PFAS currently contaminating Plaintiff's source and drinking water is from industrial sources and is not the result of any AFFF manufactured pursuant to military specifications."). But that is not the law in this circuit, *see Meadows*, 88 F.4th at 1344–46, and

3M's historic manufacture of AFFF for the government are not "the actions for which it is being sued" in this case, *see Caver*, 845 F.3d at 1142. Remand is therefore warranted.

A court in this circuit recently had occasion to apply *Caver* and *Meadows* to facts nearly identical to this case. *See Town of Pine Hill, Alabama v. 3M Co., et al.*, No. CV 2:24-00284-KD-N, 2025 WL 733100 (S.D. Ala. Feb. 14, 2025), *report and recommendation adopted*, No. CV 2:24-00284-KD-N, 2025 WL 728461 (S.D. Ala. Mar. 6, 2025). There, as here, 3M attempted to remove a local government's lawsuit alleging PFAS contamination of drinking water by private industry based on 3M's assertion that it also manufactured MilSpec AFFF. *Id.* at *3.

The *Pine Hill* court rejected 3M's "MilSpec AFFF" argument, holding that "3M's manufacture for and supplying of AFFF to the U.S. military are not at the 'heart' of Pine Hill's claims against 3M" and "are not 'actions for which [3M] is being sued.'" *Id.* at *5 (quoting *Caver* and *Meadows*). In other words, "because none of Pine Hill's claims against [3M were] premised on the design, manufacture, or sale of AFFF to the U.S. military," 3M was "not . . . entitled to removal under § 1442(a)(1)." *Id.* at *3.

This case is no different. The "heart" and "gravamen" of Savannah's claims against 3M is its manufacture and sale of commercial PFAS to private industries in Georgia and South Carolina. (Pl.'s Compl., ECF No. 1-1, ¶¶ 1–12.) AFFF has nothing to do with this, and 3M's alleged manufacture and sale of AFFF to the U.S. military is simply not an "action[] for which [3M] is being sued" in this case. *See id.* ¶¶ 20–22.

Because 3M's anchor for removal—MilSpec AFFF—is simply not relevant to Savannah's claims (much less the "heart" of Savannah's claims), 3M cannot remove on the basis of MilSpec AFFF. *See Pine Hill*, 2025 WL 733100 at *5 ("Because 3M has not shown that it performed 'the actions for which it is being sued under color of federal office,' the undersigned finds that 3M is

not entitled to federal-officer removal in this action."); *see also Young v. Tyco Fire Prods., LP*, No. 21-15912, 2022 WL 486632, at *2 (9th Cir. Feb. 17, 2022) (remanding PFAS lawsuit removed to federal court by AFFF Manufacturer due to its "failure to show a plausible causal nexus between its government-directed actions and the [plaintiffs'] claims").

As the Eleventh Circuit has recognized, "[t]o allow [a defendant] to remove the action if any *single* allegation . . . related to his official duties would run contrary to both the removal statute and precedent." *Meadows*, 88 F.4th. at 1345. To allow 3M to remove this action where *no* allegations relate to any purported duties under a federal officer would do the same. This case should therefore be remanded to state court.

### B.      Savannah's Express Disclaimer of Federal Claims is Sufficient to Justify Remand

"[F]ederal courts have consistently granted motions to remand based on a plaintiff expressly disclaiming the claims upon which federal officer removal was based." *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1363 (S.D. Fla. 2016) (internal quotations and alterations omitted). In particular, "disclaimers which 'explicitly renounce[] claims of a specific nature' [a]re sufficient to warrant remand of an action where the removal was based on the federal officer removal statute." *Id.* at 1364. As the First Circuit has explained,

> [t]o defeat removal, an express disclaimer must explicitly renounce claims upon which federal officer removal was based. If a plaintiff renounces such claims, then a defendant is not entitled to a federal forum in which to raise a defense arising out of his official duties, because such a defense pertains to claims that simply do not exist.

*Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 187 (1st Cir. 2024) (cleaned up); *Young v. Tyco Fire Prods., LP*, No. 21-15912, 2022 WL 486632, at *2 (9th Cir. Feb. 17, 2022) (upholding remand where plaintiff "expressly disavowed" defendant's basis for federal officer removal). That is exactly what Savannah did in its Complaint:

> Plaintiff makes no claim that the manufacture or use of Aqueous Film-Forming Foam ("AFFF") in any way caused or contributed to its damages or the claims asserted in this lawsuit.
>
> * * *
>
> Plaintiff expressly disclaims any cause of action or damages arising from or associated with AFFF manufacture, sale, use or disposal by the named Defendants, or by any un-named defendant or entities, including any legal or factual claim based on alleged "Mil Spec AFFF."

(Pl.'s Compl., ECF No. 1-1, ¶¶ 20–22); *see also Connecticut v. EIDP, Inc.*, No. 3:24-CV-239 (SRU), 2024 WL 5135601, at *4 (D. Conn. Dec. 17, 2024) (finding plaintiff's "express disclaimer [of AFFF] is exactly the type that defeats federal officer removal jurisdiction" under *Express Scripts*).

In particular, federal officer removal is not proper when "a plaintiff . . . disclaims any claims that arise from a location owned and operated by the federal government . . . then sues a defendant for the defendant's conduct on private property divorced from the work that it performed for a federal officer." *Express Scripts*, 119 F.4th at 187.

Savannah's disclaimer of AFFF does exactly that, disclaiming any causes of action potentially arising from locations owned and operated by the federal government and instead suing 3M based solely on its private conduct as a manufacturer of commercial PFAS:

> Plaintiff expressly disclaims any potential claims arguably arising from any federal enclaves, including any military installations or other locations that may have used AFFF pursuant to military specifications. This case is brought against the Defendants solely in their capacities as private manufacturers and users of PFAS.

(Pl.'s Compl., ECF No. 1-1, ¶ 22.)

This general principle—that express disclaimers of federal claims are sufficient to defeat federal officer removal—has also been adopted in the context of express disclaimers of AFFF-related claims and damages in PFAS pollution cases:

- *Young v. Tyco Fire Prods., LP*, No. 21-15912, 2022 WL 486632, at *2 (9th Cir. Feb. 17, 2022) (holding that AFFF manufacturer could not remove to federal court under federal

officer theory merely because it "propose[d] an alternative theory of causation that the [plaintiffs] have expressly disavowed");

- *New Hampshire v. 3M Co.*, 665 F. Supp. 3d 215, 220 (D.N.H. 2023) (granting motion to remand because plaintiff "disclaimed in this suit recovery for harm from AFFF contamination, which eliminates any connection between the State's claims in this suit and 3M's production of MilSpec AFFF");

- *Illinois ex rel. Raoul v. 3M Co.*, 693 F. Supp. 3d 948, 957 (C.D. Ill. 2023), *aff'd sub nom. People ex rel. Raoul v. 3M Co.*, 111 F.4th 846 (7th Cir. 2024) ("[C]ourts have consistently granted motions to remand where the plaintiff expressly disclaimed the claims upon which federal officer removal was based.");

- *Connecticut v. EIDP, Inc.*, No. 3:24-CV-239 (SRU), 2024 WL 5135601, at *4 (D. Conn. Dec. 17, 2024) (granting remand to state court where plaintiff "specifically and unambiguously disclaims the claims—for PFAS contamination from AFFF—upon which federal officer removal is based");

- *Maine v. 3M Co.*, No. 2:23-CV-00210-JAW, 2023 WL 4758816, at *10 (D. Me. July 26, 2023) ("Here, the State's disclaimer [of AFFF] is express, unambiguous, and plain, and in the Court's view, fits within the category of express disclaimers courts have found effective to justify a remand order."); and

- *Grosch v. Tyco Fire Prods. LP*, No. CV-23-01259-PHX-DWL, 2023 WL 5993548, at *5 (D. Ariz. Sept. 15, 2023) (granting remand where plaintiff "expressly disavowed any claim for relief premised on exposure to MilSpec AFFF").

The general thrust of these cases is that, when a plaintiff expressly disclaims any causes of action related to AFFF, any purported federal government contractor defense is rendered irrelevant:

> courts have granted motions to remand . . . non-AFFF PFAS complaints, uniformly holding that the plaintiffs' express disclaimer of any claims related to AFFF destroys any nexus between the claims and the defendants' actions as a military contractor, and renders a federal government contractor defense irrelevant.

*Connecticut*, 2024 WL 5135601, at *4.[2]

---

[2] This precept is true not only in the context of PFAS and AFFF, but anywhere a plaintiff's disclaimer severs the relationship between a defendant's conduct and its federal acts. *See Batchelor*, 185 F. Supp. 3d at 1363; *Hayden v. 3M Co.*, No. CIV.A. 15-2275, 2015 WL 4730741,

In other words, it would be impossible for 3M to be held liable for MilSpec AFFF contamination in this lawsuit, because Savannah disclaimed any claims or damages related to MilSpec AFFF. *See New Hampshire*, 665 F. Supp. 3d at 227–28 (noting that "there is no scenario under which 3M could be found liable for any damages caused by AFFF" due to plaintiff's AFFF disclaimer). As such, 3M's purported federal government contractor defense is simply a "red herring":

> [T]his case is not subject to removal pursuant to the federal officer removal statute. The first reason is that, in light of Plaintiffs' theory of liability as expressed in the FAC and further refined in the motion-to-remand briefing, **Plaintiffs are not seeking to hold Tyco liable for the design, manufacture, and distribution of MilSpec AFFF**. . . . Given that narrow theory of liability, **Tyco's argument** that it may be able to raise a federal defense to any product liability claim arising from its design, manufacture, and distribution of MilSpec AFFF—and that it should be allowed the remove this action to federal court so it may pursue such a defense—**is a red herring**.

*Grosch*, 2023 WL 5993548, at *4 (emphasis added).

Savannah has not asserted any claims related to AFFF in this case. It does not seek any damages related to AFFF in this case. Due to the express, unambiguous disclaimer in Savannah's Complaint, 3M *cannot* be held liable for PFAS contamination originating from AFFF, and no court would ever have to even reach the question of whether that AFFF was manufactured pursuant to

---

at *4 (E.D. La. Aug. 10, 2015); *Dougherty v. A O Smith Corp.*, No. CV 13-1972-SLR-SRF, 2014 WL 3542243, at *10 (D. Del. July 16, 2014), *report and recommendation adopted sub nom. Dougherty v. A.O. Smith Corp.*, No. CV 13-1972-SLR-SRF, 2014 WL 4447293 (D. Del. Sept. 8, 2014); *Barrett v. CLA-VAL Co.*, No. CV077774PSGFFMX, 2008 WL 11422175, at *2 (C.D. Cal. Feb. 5, 2008); *Long v. 3M Co.*, No. 3:23-CV-1325-AR, 2024 WL 866819 (D. Or. Jan. 31, 2024), *report and recommendation adopted*, No. 3:23-CV-1325-AR, 2024 WL 865872 (D. Or. Feb. 29, 2024); *Siders v. 20TH Century Glove Corp. of Texas*, No. 2:15-CV-13278, 2016 WL 1733473 (S.D.W. Va. Apr. 29, 2016); *Phillips v. Asbestos Corp.*, No. C 13–5655 CW, 2014 WL 794051, at *2 (N.D. Cal. Feb. 26, 2014); *Madden v. A.H. Voss Co.*, No. C 09–03786 JSW, 2009 WL 3415377, at *2–3 (N.D. Cal. Oct. 21, 2009); *Schulz v. Crane Co.*, No. 2:13–CV–02370–KJM, 2014 WL 280361, at *2 (E.D.Cal. Jan. 23, 2014); *Westbrook v. Asbestos Defendants (BHC)*, No. C-01-1661 VRW, 2001 WL 902642 (N.D. Cal. July 31, 2001).

"reasonably precise specifications" from the military. Simply put, 3M's "MilSpec AFFF" argument—the sole, driving force behind its removal attempt—is irrelevant, and 3M's purported federal government contractor defense is rendered moot.

Nevertheless, 3M argues that under a recent ruling by the Fourth Circuit, *Maryland v. 3M Co.*, No. 24-1218, 2025 WL 727831 (4th Cir. Mar. 7, 2025), a plaintiff's explicit disclaimer of AFFF does not preclude federal officer removal in a PFAS contamination case. (*See* 3M Notice of Removal ¶ 5.) *Maryland* does not apply to this case for two reasons.

First, *Maryland* is factually distinguishable. It involved statewide contamination cases brought on behalf of the States of Maryland and South Carolina. *See Maryland*, 2025 WL 727831, at *2–3. In each of those cases, the states brought bifurcated lawsuits, one seeking recovery for AFFF-related damages and the other seeking recovery for non-AFFF-related damages. *Id.* Critically, the states' parallel lawsuits—one related to AFFF and the other non-AFFF—sought remediation to the *same* natural resources. *See id.* at *2–3, *6. In other words, even though the states disclaimed AFFF in their respective "non-AFFF" lawsuits, they still sought to remediate the same natural resources impacted by AFFF as alleged in their AFFF lawsuits. *See id.* at *6 (noting that "PFAS from different sources commingle to the point that it is impossible to identify the precise source of a contaminant once those chemicals seep into the relevant waterways. . . . so any remediation would necessarily implicate" 3M's alleged MilSpec AFFF). On this basis, the Fourth Circuit concluded that the States' AFFF disclaimers were mere "artful pleading." *Id.*

Those issues simply are not present in this case. Savannah is not seeking the remediation of natural resources impacted by both AFFF and non-AFFF; instead, the City is simply seeking damages to fund a water treatment facility capable of removing Defendants' PFAS. (Pl.'s Compl.,

ECF No. 1-1, ¶¶ 30–31.) This is necessary because Savannah alleges that PFAS wholly unrelated to AFFF has caused Savannah's drinking water to exceed federal mandates. *Id.* ¶ 199.

Second, and more importantly, *Maryland* is not binding on this Court, and to the extent that it conflicts with Eleventh Circuit precedent, it must be disregarded. *See* Pitts v. United States, 4 F.4th 1109, 1117 n.3 (11th Cir. 2021) (noting that out-of-circuit "decisions aren't binding on any courts in this . . . circuit"); *Jones Creek Invs., LLC v. Columbia Cnty., Ga.*, 98 F. Supp. 3d 1279, 1306 (S.D. Ga. 2015) (noting that "other Circuits' opinions are not binding on this Court" and may only "be looked to as persuasive authority when not in conflict with Eleventh Circuit holdings").

It does not appear that the Fourth Circuit has ever recognized the Eleventh Circuit's precedent requiring courts to look to the "*heart*" or "*gravamen*" of the plaintiff's claims in order to determine if the removing party "performed the *actions for which it is being sued* under color of federal office." *See Meadows*, 88 F.4th at 1344–45; *Caver*, 845 F.3d at 1142 (emphasis added). Indeed, rather than look to the "heart" or "gravamen" of the plaintiffs' claims, the Fourth Circuit in *Maryland* "credit[ed]" 3M's "theory of the case as to whether the conduct with which it ha[d] been charged [wa]s related to its federal work." *Maryland*, 2025 WL 727831, at *5.

Yet, as explained above, the Eleventh Circuit has cautioned against simply "rubber stamp[ing]" the removing party's theories, noting that any "deference" owed to the defendant under the Supreme Court's decision in *Acker* is limited to "crediting a *plausible* reading of a *specific* legal authority." *See Meadows*, 88 F.4th at 1346. As a result, the Eleventh Circuit has rejected invitations to "accept [the defendant's] assertions at face value" or "blindly [] accept" that defendant's theory of the case. *Id.* The Fourth Circuit, meanwhile, has stated that it is the *plaintiff's* "theory of charged conduct" that it "cannot blindly accept," *see Maryland*, 2025 WL 727831, at *5.

Finally, the Eleventh Circuit has noted that, "[t]o allow [a defendant] to remove the action if any *single* allegation . . . related to his official duties would run contrary to both the removal statute and precedent." *Meadows*, 88 F.4th at 1345. The Fourth Circuit, on the other hand, has suggested that "'even a morsel of contamination' derived from Military AFFF" could form the basis of federal officer removal. *See Maryland*, 2025 WL 727831, at \*7. In sum, the *Maryland* opinion, to the extent it is not factually distinguishable, conflicts with Eleventh Circuit precedent and should be disregarded.

### C.    3M Cannot Meet its Burden of Establishing That Federal Officer Removal is Proper

Even if 3M *could* make MilSpec AFFF relevant to this case, 3M still cannot meet the elements of federal officer removal. This is because 3M's entire basis for removal rests on a false factual premise—that it manufactured AFFF "in accordance with rigorous military specifications."

The AFFF MDL Court—where 3M wants to send this case—ruled over two years ago "**as a matter of law** that the AFFF MilSpec is not a reasonably precise specification under the first prong of *Boyle*." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at \*8 (D.S.C. Sept. 16, 2022).

In fact, 3M's removal makes several factual assertions that directly contradict the holding of the AFFF MDL Court:

| 3M's Factual Misrepresentations (2025) | AFFF MDL Court's Prior Rulings (2022) |
| --- | --- |
| "Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not a mere 'rubber stamping.' It created (and has updated) detailed specifications . . . **Those specifications are 'reasonably precise,' including in requiring the use of PFAS**." (3M Notice of Removal, ECF No. 1, ¶ 49) (emphasis added). | "[T]he Court finds **as a matter of law** that the **AFFF MilSpec is not a reasonably precise specification** . . . ." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at \*8 (emphasis added). |

18

| "3M's use of **PFAS in MilSpec AFFF was required** by military specifications." *Id.* ¶ 54. | "The MilSpec . . . **plainly does not require** PFOA, PFOS or any other C8-based chemistry." *Id.* at *7. |
|---|---|
| "Plaintiffs are seeking to use state tort law to attack **design choices dictated by the military**." *Id.* | "The Court finds that the **MilSpec did not specify the use of a particular formula** or the use of C8 chemistry." *Id.* at *6. |

Setting aside these glaring factual misrepresentations, the AFFF MDL Court's finding—as a matter of law—that 3M's AFFF was not manufactured pursuant to a "reasonably precise specification," is fatal to 3M's removal. This is because a defendant who fails to show that the government provided "reasonably precise specifications" cannot establish the elements necessary for federal officer removal.

     **1.  3M cannot meet the "acting under" element of federal officer removal.**

The "acting under" element of federal officer removal "depend[s] on the detail and *specificity* of the federal direction of the defendant's activities and the government's exercise of control over the defendant." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 428 F. Supp. 2d 1014, 1017 (D. Minn. 2006) (emphasis added) (citing *Watson v. Phillip Morris Cos.*, 551 U.S. 142 (2007). Even when the federal government "directs, supervises, and monitors a company's activities in considerable detail," that company is not necessarily entitled to federal officer removal. *Graves v. 3M Company*, 17 F.4th 764, 769 (8th Cir. 2021) (citing *Watson*).

Nor is a company considered to be "acting under" a federal officer whenever it produces a product for a federal agency in compliance with that agency's specifications. *See, e.g., Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 673 (E.D. La. 2007) ("[I]t is simply not the case that private entities are entitled to a federal forum whenever litigation arises concerning products sold to the federal government."); *see also Mayor and City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 230 (4th Cir. 2022) (rev'd on other grounds) (oil company that provided gasoline for resale on

military bases was not "acting under" a federal officer; holding otherwise "would bring every seller of contracted goods and services within the ambit of § 1442 when the government is a customer").

Instead, to remove this case under § 1442, 3M must demonstrate that it was acting under the "subjection, guidance, or control" of the federal government. *Watson*, 551 U.S. at 143, 147 S. Ct. 2301. Close supervision or regulation by the federal government is not enough; rather, the contractor must be subject to "intense direction and control"—and simply being subject to "specifications" that "required compliance" is insufficient to satisfy this element. *See Mayor & City Council of Baltimore,* 31 F.4th at 230–31.

In short, where there are no "reasonably precise specifications" from the federal government, there can be no "acting under" a federal officer for purposes of federal officer removal. Numerous courts have held that a defendant cannot establish the "acting under" element—and remand is therefore necessary—when the defendant fails to show that it acted pursuant to "reasonably precise specifications":

- *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 726 (9th Cir. 2015) (upholding trial court's remand to state court where defendant could not establish the "acting under" element of federal officer removal because it "was unable to identify any precise specifications" from the federal government);

- *Cardaro v. Aerojet Gen. Corp.*, No. CIV.A. 05-2684, 2010 WL 3488207, at *6 (E.D. La. Aug. 27, 2010) (finding that defendant could not establish the "acting under" element in part because "the court cannot find that the Navy approved reasonably precise specifications");

- *Grosch*, 2023 WL 5993548, at *6 (D. Ariz. Sept. 15, 2023) (holding that defendant had "not adequately demonstrated that it was 'acting under' a federal officer" where it "was merely complying with generally applicable specifications when designing MilSpec AFFF");

- *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 428 F. Supp. 2d 1014, 1018 (D. Minn. 2006) (finding defendant did not meet "acting under" element of federal officer removal jurisdiction because federal government "did not exercise control over [defendant's] design, manufacture, or sale of the [product] at issue").

Here, as in those cases, 3M cannot show it was subject to the "intense direction and control" necessary to establish the "acting under" element of federal officer removal because of the AFFF MDL Court's finding "as a matter of law that the AFFF MilSpec is not a reasonably precise specification . . . ." *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *8.

Simply put, because 3M did not manufacture AFFF pursuant to a "reasonably precise specification" from the federal government, it cannot show that its conduct occurred at the "intense direction and control" of a federal officer (or any person acting under that officer). 3M therefore fails to satisfy the "acting under" element required for federal officer removal, and remand to state court is warranted as a result.

### 2. 3M cannot establish the "causal nexus" element of federal officer removal.

Not only must 3M establish that it was "acting under" a federal officer in order to remove this case to federal, but it must also "show a ***causal connection*** between what it has done under asserted official authority and the action against it." *See Effingham Health*, 2024 WL 3461063, at *3. 3M cannot make that showing.

For federal officer removal, "the causal inquiry is closely tied to whether the government issued reasonably precise specifications." *Viscosi v. Am. Optical Corp.*, No. CIV.A.307CV1559SRU, 2008 WL 4426884, at *5 (D. Conn. Sept. 29, 2008) (quoting *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 203 (D. Mass. 2008)); *Barrett v. CLA-VAL Co.*, No. CV077774PSGFFMX, 2008 WL 11422175, at *3 (C.D. Cal. Feb. 5, 2008).

In particular, where "reasonably precise specifications" do not exist, the "causal nexus" element is not established:

> If the government did issue reasonably precise specifications and the defendants obeyed them, then the federal contractual obligation caused the plaintiffs' harm.

The converse is also true: **if the government did not issue reasonably precise specifications ... then the plaintiffs' harms were not caused by the defendants' contractual responsibilities**.[3]

*Viscosi*, 2008 WL 4426884, at *5 (emphasis added) (quoting *Hilbert*, 529 F. Supp. 2d at 203).

As a result, federal courts have routinely found that, for cases removed under § 1442, a defendant that fails to establish "reasonably precise specifications" also fails to establish a "causal nexus"—and remand is therefore required:

- *Hilbert*, 529 F. Supp. 2d at 203 ("[H]aving concluded that the defendants have not shown reasonably precise specifications as to the warnings, the Court also finds that the defendants have not shown a causal nexus" necessary for federal officer removal.);

- *Barrett*, 2008 WL 11422175, at *3 (C.D. Cal. Feb. 5, 2008) ("[H]aving concluded that [defendant] has not shown reasonably precise specifications as to the warnings, such as specifications demonstrating the Navy required it to refrain from issuing warnings, the Court finds that [defendant] has failed to establish a causal nexus" necessary for federal officer removal);

- *State v. Monsanto Co.*, 274 F. Supp. 3d 1125, 1130 (W.D. Wash. 2017), *aff'd*, 738 F. App'x 554 (9th Cir. 2018) (finding no "causal nexus" and granting remand in PCB pollution case because defendant's "PCBs were *mentioned in* a government specification, not *produced to* government specification"); and

- *Morton v. 3M Co.*, No. CV 18-5956-R, 2018 WL 4520950, at *2 (C.D. Cal. Sept. 19, 2018) (granting motion to remand based on defendant's failure to show a "causal nexus" where there was "no factual basis to support [defendant's] position that it was bound by Navy specifications and standards").

This case is no different. Because 3M's MilSpec AFFF was not "reasonably precise" as a matter of law, *see In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *8, 3M cannot meet the "causal nexus" element necessary to invoke federal officer removal, *see Hilbert*, 529 F. Supp. 2d at 203; *Barrett*, 2008 WL 11422175, at *3.

---

[3] *See also Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715–16 (5th Cir. 2015) ("If the basis for state liability is an act stemming from the defendant's compliance with 'reasonably precise [government] specifications,' the contractor is not liable. By the same token, if the challenged conduct neither stems from nor conflicts with government contractual requirements, the [government contractor] defense is inapplicable.").

### 3. 3M cannot meet the "colorable federal defense" element of federal officer removal.

Notwithstanding the fact that Savannah has not raised any federal claims, a "colorable" defense exists only "where (1) the federal government approved reasonably precise specifications, (2) the manufactured equipment conformed to the government's specifications, and (3) the contractor warned the federal government about the equipment dangers that were unknown to the government." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988). In other words, to stay in federal court, 3M must be able to demonstrate that it can present evidence for each element of the *Boyle* government contractor defense.

3M cannot meet the government contractor as a matter of law. As explained above, the AFFF MDL Court concluded—after years of discovery, briefing, and the presentation of reams of evidence—that "**as a matter of law . . . the AFFF MilSpec is not a reasonably precise specification under the first prong of *Boyle*.**" *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, 2022 WL 4291357, *8 (emphasis added).

The case law is clear: when a defendant—like 3M—cannot establish a "reasonably precise specification under the first prong of *Boyle*," the "colorable federal defense" element fails and remand to state court is warranted.

- *Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720, 731 (9th Cir. 2015) (upholding remand on grounds that defendant "did not demonstrate by a preponderance of the evidence a colorable government contractor defense" by failing "to proffer any evidence that the government approved 'a particular specification'");

- *Williams v. Gen. Elec. Co.*, 418 F. Supp. 2d 610, 615–16 (M.D. Pa. 2005) (finding no "colorable federal defense" and granting motion to remand where defendant failed to establish that the "Navy provided precise specifications" for the product at issue);

- *Cardaro v. Aerojet Gen. Corp.*, No. CIV.A. 05-2684, 2010 WL 3488207, at *6 (E.D. La. Aug. 27, 2010) (rejecting defendant's "colorable federal defense"

argument and granting motion to remand where "the court [could ]not find that the Navy approved reasonably precise specifications . . . for purposes of the first prong of the *Boyle* standard")

- *Glein v. Boeing Co.*, No. 10-452-GPM, 2010 WL 2608284, at *3 (S.D. Ill. June 25, 2010) (remanding to state court on grounds that there was no "colorable federal defense" because defendant failed to show that federal government "approved reasonably precise specifications").

3M cannot meet the elements of the government contractor defense, and therefore, it cannot meet the elements of federal officer removal. This case is due to be remanded.

### D.    Savannah is Entitled to Recover Fees Under 28 U.S.C. § 1447(c)

It is within this Court's discretion to award fees under 28 U.S.C. § 1447(c). *Id.* ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."); *see also Martin v. Franklin Capital Corp*., 546 U.S. 132, 136 (2005)). On motion to remand, the "standard for awarding fees should turn on the reasonableness of the removal" and "courts may award fees under § 1447(c) where the removing party lacked an objectively reasonable basis for seeking removal." *Martin,* 546 U.S. at 136.

3M lacked an "objectively reasonable basis" for seeking removal of this case. 3M knew this case had nothing to do with AFFF. 3M knew that, even if AFFF could apply to this case, the City of Savannah explicitly disclaimed any relief related to AFFF. 3M knew that, even if it could get past Savannah's disclaimer of AFFF, it would not be able to show that its AFFF was manufactured pursuant to "reasonably precise specifications" from the U.S. military. In fact, 3M directly contradicted many of the findings of the AFFF MDL court in order to remove this case, all in an attempt to get this case transferred to the AFFF MDL court whose findings it contradicted.

Moreover, all of this was done to serve no other purpose than to put Savannah's case in a judicial quagmire that would result in years of delay. 3M has forced Savannah to halt its investigation of this case, and ultimately a resolution for providing PFAS-free drinking water to

its customers, all while the clock ticks on compliance with EPA mandates. Savannah respectfully requests an award of costs and fees under 28 U.S.C. § 1447(c) and will submit affidavits from counsel in support of this request if necessary.

## V.    CONCLUSION

This case is about PFAS sold to and used by private industry, not AFFF sold to and used by the military. Because the "heart" and "gravamen" of Savannah's claims against 3M are its manufacture and sale of commercial PFAS to private industry, 3M's "MilSpec AFFF" argument—the sole basis for its removal—is factually irrelevant. And because Savannah expressly disclaims any recovery related to AFFF, 3M's "MilSpec AFFF" argument is also irrelevant as a matter of law. And even if 3M's "MilSpec AFFF" argument could be relevant to this case, 3M cannot meet its burden of establishing federal officer removal. 3M has not acted under a federal officer, it cannot demonstrate a causal nexus between its behavior and a federal directive, and it cannot raise a "colorable" federal defense to what are exclusively state law claims.

The City of Savannah respectfully requests that this case be summarily remanded to the Superior Court of Chatham County, Georgia, and that Savannah be entitled to recover the fees and costs associated with responding to 3M's removal.

Respectfully submitted this 17th day of March, 2025.


2 East Bay Street
City Hall, 3rd Floor GA 30161
Savannah, GA 31401
Phone: 912-525-3131
blovett@savannahga.gov


410 East Broughton Street
Savannah, Georgia 31401
Telephone: (912) 651-9967

**OFFICE OF THE CITY ATTORNEY**
*/s/ R. Bates Lovett*
R. BATES LOVETT
Georgia Bar No. 459568
**Counsel for Plaintiff**


**HARRIS LOWRY MANTON LLP**
*/s/ Jeffrey R. Harris*
JEFFREY R. HARRIS
Georgia Bar No. 330315

Facsimile: (912) 651-1276                        STEPHEN G. LOWRY
jeff@hlmlawfirm.com                              Georgia Bar No. 460289
steve@hlmlawfirm.com                             JED D. MANTON
jed@hlmlawfirm.com                               Georgia Bar No. 868587
molly@hlmlawfirm.com                             MADELINE E. MCNEELEY
cdonahue@hlmlawfirm.com                          Georgia Bar No. 460652
                                                 COLE F. DONAHUE
                                                 Georgia Bar No. 632966
                                                 **Counsel for Plaintiff**


                                                 **FRANKLIN LAW LLC**
2919 River Drive                                 */s/ Rebecca Franklin Harris*
Thunderbolt, Georgia 31404                       REBECCA FRANKLIN HARRIS
Phone: 912-335-3305                              Georgia Bar No. 141350
rebecca@franklinlawllc.com                       **Counsel for Plaintiff**


                                                 **FRIEDMAN, DAZZIO & ZULANAS, P.C.**
3800 Corporate Woods Drive                       */s/ Matt Conn*
Birmingham, AL 35242                             JEFF FRIEDMAN
Phone: 205-278-7000                              MATT CONN
jfriedman@friedman-lawyers.com                   MADISON GITSCHIER
mconn@friedman-lawyers.com                       ETHAN WRIGHT
mgitschier@friedman-lawyers.com                  **Counsel for Plaintiff**
ewright@friedman-lawyers.com                     ***(Admitted Pro Hac Vice)***


## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to all counsel of record.