## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

THE MAYOR AND ALDERMEN OF THE
CITY OF SAVANNAH, GEORGIA,

      Plaintiff,

v.

3M COMPANY, *et al.*,

      Defendants.

Case No. 4:25-cv-00058

## DEFENDANT 3M COMPANY'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION TO REMAND

## INTRODUCTION

Defendant 3M Company ("3M") properly removed this case to federal court. Plaintiff sued 3M and other Defendants in state court seeking damages and injunctive relief from alleged contamination of Plaintiff's drinking water supply with certain chemicals—per- and polyfluoroalkyl substances ("PFAS"). 3M's notice of removal plausibly alleged that some PFAS in Plaintiff's water supply stemmed from use at nearby military bases and airports of certain firefighting foams—aqueous film-forming foams ("AFFF")—that 3M made according to U.S. military specifications ("MilSpec") that required the AFFF to contain PFAS. 3M also plausibly alleged that PFAS from MilSpec AFFF is commingled with PFAS from other alleged sources in Plaintiff's water supply. As confirmed recently by multiple federal appellate courts, those allegations were sufficient for 3M to remove this case under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which entitles 3M to a federal forum to adjudicate 3M's federally-directed conduct and federal government contractor defense related to its manufacture of MilSpec AFFF.

As an initial matter, the Court should defer consideration of Plaintiff's Motion until after the Judicial Panel on Multidistrict Litigation ("JPML") decides whether to transfer this action to

the *In re AFFF Products Liability Litigation* MDL ("MDL") in the District of South Carolina. 3M has moved under 28 U.S.C. § 1407 and JPML Rule 7.1(b)(i) for the JPML to transfer this case to the MDL.[1] The JPML likely will consider that motion at its May 29, 2025 session (with a ruling to follow shortly thereafter). As this Court has found, deferring adjudication of motions pending a JPML ruling can "avoid duplicative litigation" and "would conserve judicial resources and serve the best interest of the parties." *Breon v. Ga. Bank & Tr. Co. of Augusta*, 2008 WL 11417696, at *1-2 (S.D. Ga. May 14, 2008) (Wood, J.). Here, too, deferring a ruling on Plaintiff's Motion until the JPML has a chance to decide 3M's transfer motion would serve judicial efficiency.[2]

The interests of judicial economy served by deferring a ruling on the remand motion for the brief time needed to await the JPML's decision outweigh Plaintiff's specious argument (Pl. Mot. at 3-4) that time is suddenly of the essence. Although Plaintiff declared PFAS a "public nuisance" and announced its intent to file a lawsuit against PFAS manufacturers in May 2024, Plaintiff waited nearly nine months before filing suit in February 2025, and—according to Plaintiff's most recent water quality data—the running averages for PFAS over the last four years actually fall *under* the EPA's new PFAS Maximum Contaminant Levels.[3] In short, there is no emergency requiring immediate action, and Plaintiff has not acted like there is an emergency.

If the Court rules on the Motion to Remand before a decision by the JPML, or if the JPML

---

[1]    *See* **Exhibit 1**, JPML Motion to Transfer *City of Savannah* To AFFF MDL.

[2]    Plaintiff's Motion suggests that Plaintiff intends to oppose transfer, but the JPML has explained that centralization of AFFF cases in the MDL furthers § 1407's purpose of promoting judicial efficiency. *See In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394-1395 (J.P.M.L. 2018). Courts in other PFAS cases thus have stayed proceedings, including rulings on pending remand motions, to await JPML transfer orders. *See, e.g.*, *Marathon Petroleum Co. LP v. 3M Co.*, 2022 WL 821667 (E.D. Mich. March 17, 2022); *Tibbetts v. 3M Co.*, 2022 WL 252685 (E.D. La. Jan. 27, 2022). Other courts have simply refrained from ruling on remand motions pending JPML orders—in one instance even though the court had held an expedited hearing on the remand motion. *See Muscle Shoals, Ala. v. 3M Co.*, No. 3:24-cv-01062 (N.D. Ala.), ECF Nos. 16, 39, 46.

[3]    *See* 3M's Response to Plaintiff's Motion For Expedited Hearing, ECF No. 12.

denies transfer, the Court should deny the Motion. Unlike some other bases for removal, Plaintiff's allegations do not control removal of a case under the federal officer removal statute, and the federal officer removal statute is "'liberally construe[d]'" to enable federal government contractors like 3M to remove lawsuits to federal court when—crediting the government contractor's "'theory of the case'"—the lawsuits are connected to their federal work for which they have a colorable federal defense. *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142, 1145 (11th Cir. 2017) (quoting *Watson v. Philip Morris Co., Inc.,* 551 U.S. 142, 147 (2007), and *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir.2008)); *see Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427-1429 (11th Cir. 1996) (a private defendant's right of removal is "'absolute'" when § 1442's prerequisites are met (quoting *Willingham v. Morgan,* 395 U.S. 402, 406 (1969)). This lawsuit therefore belongs in federal court because 3M plausibly alleged a federal government contractor defense to alleged contamination deriving at least in part from use of 3M's MilSpec AFFF at locations in Georgia from where PFAS plausibly migrated to Plaintiff's water supply.

Plaintiff argues that the Court should remand this case to state court because the complaint does not expressly seek relief for PFAS stemming from AFFF and purportedly disclaims relief for PFAS from AFFF. But multiple courts of appeals have recently rejected that very argument, holding that allegedly disclaiming AFFF-related relief does not preclude 3M from removing PFAS lawsuits under the federal officer removal statute. For example, in *Maryland v. 3M Co.*, -- F.4th -- , 2025 WL 727831 (4th Cir. Mar. 7, 2025), the Fourth Circuit emphasized that "a plaintiff in the [federal officer] removal context is no longer the master of its complaint," and courts must credit the "defendant's well-pleaded facts of removal" and "theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Id.* at *5. Because 3M plausibly alleged that PFAS from MilSpec AFFF was commingled with PFAS from other alleged sources

in the water supplies and other natural resources at issue, *id.* at *8, the court refused to give dispositive effect to the plaintiffs' purported disclaimers, *id.* at *5. 3M's plausible allegations of commingling of PFAS meant that the factfinder would need to "decid[e] whether certain PFAS . . . came from Military AFFF or . . . non-AFFF products," and "apportion how much . . . PFAS contamination came from Military AFFF." *Id.* at *6-7. As the court explained, "those are merits questions that belong in federal court." *Id.* at *7. *Maryland* is on all fours with this case and continues a line of well-reasoned decisions refusing to give dispositive effect to purported AFFF disclaimers like Plaintiff's here. *See id.* at *5 (citing *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 188 (1st Cir. 2024); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 n.3 (7th Cir. 2020)); *see also People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 847-48 (7th Cir. 2024). This case likewise raises merits questions of causation and apportionment relating to 3M's manufacture of MilSpec AFFF that "belong in federal court." *Maryland*, 2025 WL 727831,  at *7.

Plaintiff's argument that the Eleventh Circuit applies a different federal officer removal standard is meritless. *Maryland* and other similar decisions relied on the same longstanding principles for assessing federal officer jurisdiction that the Eleventh Circuit has endorsed. *See, e.g.*, *Caver*, 845 F.3d at 1142, 1145. Plaintiff's other arguments for remand, which invoke the MDL court's supposed finding that 3M did not manufacture PFAS-containing AFFF according to a "reasonably precise" MilSpec (Pl. Mem. 18-19), are similarly meritless. The MDL court did not hold that, as a matter of law, 3M cannot establish its government contractor defense. Rather, it concluded that 3M has an available path to proving its defense at trial. *See In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *6-8 (D.S.C. Sept. 16, 2022). And in fact, the MDL court has upheld removals of AFFF cases to federal court based on the production of MilSpec AFFF and the manufacturers' asserted federal government contractor defense. *See, e.g.*, *In re AFFF Prods. Liab.*

*Litig.*, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019) ("*In re AFFF*"). This Court therefore should deny Plaintiff's Motion to Remand as well as its unwarranted request for fees.

## BACKGROUND

Plaintiff filed this action in Georgia state court on February 5, 2025, seeking to hold 3M and other Defendants liable for PFAS in its drinking water supply. Plaintiff, the Mayor and Aldermen of the City of Savannah, operates a water treatment plant in Savannah, Georgia. Compl. ¶ 27, ECF No. 1-1 ("Compl."). Plaintiff provides customers in Chatham County, Georgia, and Effingham County, Georgia, with drinking water drawn from the Abercorn Creek, a channel that connects to the Savannah River. *Id.* ¶¶ 27, 194. The Complaint alleges that certain Defendants including 3M manufactured PFAS, and that their PFAS was then used by other Defendants who generated industrial wastewater that, when it was released into the Savannah River basin from various wastewater treatment plants, resulted in the presence of PFAS downriver in the Abercorn Creek. *Id.* ¶¶ 9-11, 33-50, 184-192. Based on those allegations, Plaintiff brings tort claims to recover damages including costs of removing PFAS from its water supply; to abate the alleged nuisance and trespass; and to enjoin Defendants to remediate the PFAS. *Id.* ¶¶ 30-31, 205-258.

The Complaint alleges that the PFAS in Plaintiff's water supply include perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). Compl. ¶ 201; *see also id.* ¶ 1 n.1. It is undisputed that PFOA and PFOS are among the same PFAS chemicals that have been used to make AFFF, including MilSpec AFFF, and for that reason are at issue in the AFFF MDL. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). But Plaintiff's Complaint purports to disclaim damages and other relief related to AFFF and to limit the case to other industrial uses of PFAS and PFAS-containing products. *See* Compl. ¶¶ 20-22.

On March 14, 2025, 3M removed this case to this Court under the federal officer removal

statute. *See* Notice of Removal ¶¶ 1-4, ECF No. 1 ("NOR"). 3M's Notice of Removal asserted that, while Plaintiff alleges that PFAS in its water supply derived from upriver wastewater treatment facilities, PFAS in the water supply just as plausibly derived from use of MilSpec AFFF at military facilities and airports near the Savannah River upriver from or in the vicinity of Plaintiff's water intakes on the Abercorn Creek. *Id*. ¶¶ 28-37. Those locations of MilSpec AFFF use include Fort Gordon (now Fort Eisenhower), the Augusta Regional Airport, and the Savannah International Airport (which is the location of a current military installation, the Savannah Air National Guard Base, and a former military facility, Travis Field). *Id*. 3M alleged that for three decades, it produced MilSpec AFFF for the U.S. military (among other users). *Id*. ¶¶ 28-29. 3M also alleged that the AFFF MilSpec expressly required AFFF to contain "fluorocarbon surfactants" (*i.e.*, PFAS like PFOA and PFOS). *Id*. ¶ 27 (quoting MIL-PRF-24385). 3M further alleged that it supplied MilSpec AFFF to military and other users in Georgia. *Id*. ¶¶ 28-29, 32.

3M's Notice of Removal alleged that PFAS from MilSpec AFFF use at Fort Gordon, the Augusta Regional Airport, and the Savannah International Airport, would have migrated to the Savannah River and ultimately the Abercorn Creek where Plaintiff's water intakes are located. *Id*. ¶¶ 31-34. 3M noted that the Complaint itself alleges that PFAS "'migrate through surface water and groundwater.'" *Id*. ¶ 36 (quoting Compl. ¶ 114). 3M explained that Fort Gordon and the Augusta Regional Airport are in Augusta, Georgia and are either the same distance from Abercorn Creek as (or closer to Abercorn Creek than) the wastewater treatment facilities that the Complaint alleges to be the source of the PFAS in Plaintiff's water supply. *Id*. ¶¶ 31-32; *see* Compl. ¶¶ 187-192. 3M also explained that the Savannah International Airport, while a few miles downriver from Abercorn Creek, is located near the Savannah River where the influence of ocean tides twice a day would carry PFAS towards Abercorn Creek and Plaintiff's water intakes. NOR ¶ 33; *see* Compl.

¶ 194. 3M further explained that Plaintiff's backup drinking water wells are located on the Savannah International Airport property, so for that reason too, Plaintiff's lawsuit involves consideration of AFFF use at that property and the extent to which it has impacted Plaintiff's water supply and relates to the damages and other relief that Plaintiff is seeking in this case. NOR ¶ 34.

The attached expert declaration establishes that some PFAS in Plaintiff's drinking water resulted from use of MilSpec AFFF. *See* **Exhibit 2**, Decl. of John Kondziolka, M.S. ("Declaration" or "Decl.").[4] 3M's expert concluded that "to a reasonable degree of scientific certainty," some PFAS in Plaintiff's water supply derived from AFFF use at the Augusta Regional Airport. *Id*. ¶¶ 2, 25; *see id.* ¶¶ 11-15; *see also id.*, Figure 2 (showing proximity of sites of AFFF use and storage at airport to Savannah River). Sales records show that 3M historically supplied the Augusta Regional Airport with MilSpec AFFF. NOR ¶ 32. The Declaration also confirms that AFFF use at Fort Gordon and the Savannah International Airport sites probably also contributed to PFAS in Plaintiff's water supply. *See* Decl. ¶¶ 19-24; *see also id.*, Figure 1 (showing locations of AFFF/PFAS sources in Savannah River watershed relative to Plaintiff's water intakes). Sales records also show that 3M directly supplied MilSpec AFFF to Fort Gordon. *Id*. ¶ 19.[5]

## LEGAL STANDARDS

Under 28 U.S.C. § 1442(a)(1), a private defendant may remove a case to federal court by showing that: (1) "it is a person . . . who acted under a federal officer"; (2) the lawsuit is "'for or

---

[4]  3M submitted the Declaration to the JPML to support transfer. While such evidence is unnecessary to support removal, 3M submits it here in response to Plaintiff's Motion. In addition to MilSpec AFFF sources of PFAS, the Declaration discusses other locations where AFFF was used that (while relevant to transfer) are not necessarily relevant to removal to the extent that 3M does not presently have evidence that the AFFF was MilSpec AFFF. *See* Decl. ¶¶ 7-10, 16-17.

[5]  In addition to direct sales of MilSpec AFFF to specific military bases, 3M was a major supplier of MilSpec AFFF to the Defense Logistics Agency, which distributed AFFF for use at military bases across the United States from a central storage facility. *See* **Exhibit 3**, DOJ Letter. Those military bases used 3M's AFFF products even though 3M has no record of direct sales to them.

relating to any act'" under color of federal office; and (3) it has "a colorable federal defense." *Caver*, 845 F.3d at 1142, 1144 (quoting 28 U.S.C. § 1442(a)(1)). An entire action may be removed to federal court if any portion is subject to federal officer removal. *See Magnin*, 91 F.3d at 1428.

Section 1442(a)(1) is an exception to the well-pleaded complaint rule, permitting removal if "the defense depends on federal law." *Jefferson Cnty. v. Acker,* 527 U.S. 423, 431 (1999). The statute's purpose is to provide "a federal forum in which to raise defenses arising from . . . federal duties." *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989). Accordingly, the statute is "liberally construed," *Watson,* 551 U.S. at 147, and "should not be frustrated by a narrow, grudging interpretation," *Willingham,* 395 U.S. at 407. Further, 3M need not prove its government contractor defense at the removal stage; instead, the "notice of removal need include only . . . plausible allegations," *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014), and courts must "credit" the removing party's "theory of the case," *Maryland*, 2025 WL 727831, at *4.

## ARGUMENT

### I.    The Court Has Federal Officer Jurisdiction Under 28 U.S.C. § 1442(a)(1).

3M's Notice of Removal adequately alleged each element of federal officer jurisdiction. 3M plausibly alleged that it was "acting under" a federal officer because 3M manufactured AFFF for the U.S. military pursuant to a MilSpec requiring the use of PFAS. NOR ¶¶ 25-27, 39-42. 3M also plausibly alleged that Plaintiff's claims are "for or relating to" 3M's acts under color of federal office because PFAS from MilSpec AFFF plausibly commingled with PFAS from other alleged sources in Plaintiff's allegedly contaminated water supply. So at a minimum, notwithstanding Plaintiff's purported disclaimer, the factfinder must address the complex causal question of whether MilSpec AFFF is a source of the PFAS, and must apportion damages between PFAS from MilSpec AFFF and from other sources. *Id.* ¶¶ 28-37, 43-45. Lastly, 3M plausibly alleged that it

has a colorable federal government contractor defense to Plaintiff's claims because they relate to MilSpec AFFF. *Id.* ¶¶ 46-54.

Plaintiff disputes each of those elements of jurisdiction but its objections are meritless. Indeed, the Fourth Circuit recently upheld 3M's federal officer removal of PFAS lawsuits containing similar AFFF disclaimers. *Maryland*, 2025 WL 727831, at *8-9.

## A.    3M Was "Acting Under" Federal Officers In Manufacturing MilSpec AFFF.

3M's manufacture of MilSpec AFFF easily qualifies 3M as a "person acting under" a federal officer. 28 U.S.C. § 1442(a)(1). The "acting under" provision requires defendants to show "an effort to *assist*, or to help *carry out*, the duties or tasks" of a federal officer. *Watson*, 551 U.S. at 152. "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017); *see, e.g.*, *Marley v. Elliott Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1273-1274 (S.D. Fla. 2008) (holding that the defendant was "acting under" federal authority in manufacturing and supplying products pursuant to contracts with the U.S. Navy (citing *Magnin*, 91 F.3d at 1427-1429)). In such cases the manufacturer is "help[ing] federal officers fulfill a basic governmental task that the government otherwise would have had to perform." *Caver*, 845 F.3d at 1143. Accordingly, courts repeatedly have held that MilSpec AFFF manufacturers were "acting under" the U.S. military in producing "mission-critical" AFFF that the federal government otherwise would have had to produce. *Ayo v. 3M Co.*, 2018 WL 4781145, at *9 (E.D.N.Y. Sept. 30, 2018); *accord Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021); *In re AFFF*, 2019 WL 2807266, at *2.

Plaintiff does not deny that 3M produced mission-critical AFFF for use by the U.S. military, pursuant to contracts with the military, in accordance with requirements of a MilSpec.

*See* NOR ¶¶ 25-28. Plaintiff argues that 3M cannot meet the "acting under" requirement because 3M supposedly was not acting under the control of a federal officer in manufacturing MilSpec AFFF (Pl. Mem. at 19-21), but this is incorrect. To be sure, the government must exercise some "subjection, guidance, or control" over private defendants' activities for them to be "acting under" a federal officer. *Watson*, 551 U.S. at 151. But courts regularly conclude that the military's issuance of detailed product specifications is itself sufficient control to enable federal officer removal. *See Sawyer*, 860 F.3d at 253, 255 (defendant "acted under the Navy" in manufacturing products matching "military specifications"); *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017) (defendant "was 'acting under' the Navy" because "military specifications" showed that "the Navy exercised a sufficient degree of guidance and control" over defendant); *Ayo*, 2018 WL 4781145, at *9.

3M sufficiently alleged that it was "acting under" the military when it manufactured AFFF conforming to detailed requirements imposed by the MilSpec, including the express requirement that AFFF contain PFAS chemicals (among other requirements regarding the design, performance, and environmental impact of AFFF). NOR ¶¶ 26-27. The military additionally tested 3M's AFFF products for conformity with the MilSpec before qualifying them for military use. *Id*. ¶ 26. Although Plaintiff repeatedly asserts that the MilSpec was not "reasonably precise" because it did not mandate which specific PFAS chemicals to use in manufacturing AFFF, that does not refute 3M's showing that its manufacture of MilSpec AFFF according to the military's detailed requirements was helping "fulfill a basic governmental task that the government otherwise would have had to perform." *Caver*, 845 F.3d at 1143; *see Ayo*, 2018 WL 4781145, at *9.[6] The

---

[6]    Plaintiff cites a number of cases in which courts found that the removing defendants failed to meet the "acting under" or the "for or relating to" requirement, Pl. Mem. at 20, 22, but those cases are irrelevant and distinguishable. 3M produced PFAS-containing AFFF according to a MilSpec

government need not specify every product detail for the manufacturer to act under federal authority.

**B.    This Action Is "For Or Relating To" 3M's Manufacture Of MilSpec AFFF.**

3M's Notice of Removal also plausibly alleges that this case is "for or relating to" acts under a federal officer. 28 U.S.C. § 1442(a)(1).[7] "The hurdle erected by this requirement is quite low," and "requires *only a connection or association* between the act in question and the federal office." *Caver*, 845 F.3d at 1144 (internal quotation marks omitted; emphasis added). In determining whether the requisite connection exists, a court must "credit [the removing party's] theory of the case." *Acker*, 527 U.S. at 432. The removing party need not set forth "an airtight case on the merits," as such a standard "would defeat the purpose of the removal statute." *Id*.

3M's removal theory easily clears this low hurdle. 3M's Notice of Removal alleged that use of MilSpec AFFF plausibly contributed to the alleged PFAS contamination of Plaintiff's water supply. NOR ¶ 2. 3M alleged that MilSpec AFFF used at Fort Gordon, the Augusta Regional Airport, and Savannah International Airport sites have impacted Plaintiff's water supply on the Abercorn Creek. *Id*. ¶¶ 30-34. 3M also alleged that PFAS from MilSpec AFFF commingled with PFAS from other alleged sources. *Id*. ¶ 36. The parties therefore will need to litigate whether and how any portion of the alleged PFAS contamination resulted from 3M's manufacture of MilSpec AFFF, and the factfinder will need to apportion PFAS between MilSpec AFFF and other sources. "The need to unravel such challenging questions in this case establishes that 3M's federal work is

---

that required PFAS. NOR ¶¶ 25-27. And Plaintiff seeks to hold 3M liable for manufacture of non-AFFF PFAS that 3M contends to be commingled with PFAS from MilSpec AFFF in Plaintiff's water supply. *Id*. ¶¶ 12, 36-37. The cases cited by Plaintiff did not involve such circumstances.

[7]    In 2011, Congress amended the federal officer statute to add the "or relating to" phrase now in the text of § 1442(a)(1)'s requirement that the lawsuit must be "for or relating to" an act under color of federal office. That amendment further "broaden[ed] the scope of acts that allow a federal officer to remove a case to federal court." *Caver*, 845 F.3d at 1144 n.8.

inextricably related to the charged conduct." *Maryland*, 2025 WL 727831, at *6. Plaintiff contends that its allegations and in particular its purported disclaimer of relief for AFFF mean that this case is not related to 3M's manufacture of MilSpec AFFF, but as discussed below, that is wrong.

### 1.    Plaintiff's Disclaimer Does Not Sever The Connection 3M Established Between Plaintiff's Claims And 3M's Manufacture Of MilSpec AFFF.

Because 3M has plausibly alleged that PFAS from MilSpec AFFF is commingled with PFAS from other alleged sources in Plaintiff's water supply, the Complaint's allegation that Plaintiff "disclaims" any cause of action or relief related to AFFF (Compl. ¶ 22) does not break the connection between this case and 3M's manufacture of MilSpec AFFF. To the contrary, multiple courts have rejected plaintiffs' reliance on such disclaimers in materially similar contexts. *See Maryland*, 2025 WL 727831, at *7-8; *Express Scripts, Inc.*, 119 F.4th at 194 (holding that disclaimer of claims related to federal work "did not justify remand" because the defendant alleged that its federal and non-federal work were "indivisible"); *Raoul*, 111 F.4th at 848 (holding that disclaimer would be ineffective if PFAS from AFFF and non-AFFF sources were commingled and the trier of fact would be required to apportion contamination between the sources).

For example, the Fourth Circuit recently vacated remand orders in two PFAS lawsuits with similar disclaimers that had been filed against 3M by the State of Maryland and the State of South Carolina. 3M had removed the cases under the federal officer removal statute based on its theory—the same theory asserted here—that PFAS from MilSpec AFFF had commingled with the alleged "non-AFFF" PFAS contamination at issue. *Maryland*, 2025 WL 727831, at *8.

The Fourth Circuit rejected the disclaimer argument Plaintiff makes here (Pl. Mem. at 12-18). First, the Court rejected Plaintiff's contention that the complaint determines whether a case is removable under § 1442(a)(1). Rather, "a plaintiff in the" federal officer "removal context is no longer the master of its complaint." *Maryland*, 2025 WL 727831, at *5. In that context, courts

must credit the "defendant's well-pleaded facts of removal" and "theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Id.*; *see Express Scripts*, 119 F.4th at 184. So it is irrelevant that the Complaint does not put at issue 3M's AFFF production. *3M* did that here by plausibly alleging that PFAS from its MilSpec AFFF was commingled with PFAS from other alleged sources. NOR ¶¶ 36-37. As in *Maryland*, the Court here should credit 3M's theory that "PFAS from different sources commingle." *Maryland*, 2025 WL 727831, at *6.

Also like Plaintiff here, Maryland and South Carolina sought to evade federal officer jurisdiction by purportedly disclaiming recovery for any PFAS contamination caused by AFFF, which they argued "sever[ed] 3M's alleged federal connection." *Maryland*, 2025 WL 727831, at *5. The Fourth Circuit rejected that argument. *Id.* at *5-6; *see also Express Scripts*, 119 F.4th at 188-89. Relying on the reasoning adopted by the First Circuit in *Puerto Rico v. Express Scripts*, 119 F.4th at 189, and the Seventh Circuit in *Baker v. Atlantic Richfield Co.*, 962 F.3d at 945 n.3, the Fourth Circuit refused to give dispositive effect to the disclaimers. Because 3M plausibly alleged that PFAS from MilSpec AFFF had commingled with alleged "non-AFFF" PFAS, "deciding whether certain PFAS contamination came from 3M's Military AFFF or from its non-AFFF products presents a challenging question of causation . . . that will ultimately fall to a factfinder." *Maryland*, 2025 WL 727831, at *6. And even if that causation question can be answered, the factfinder would also need to "apportion how much of a given sample of PFAS contamination came from Military AFFF compared to non-AFFF products." *Id.* A plaintiff's disclaimer does not obviate these questions. Instead, these questions "highlight how the charged conduct relates to [3M's] federal work." *Id.* at *6. If the disclaimer were credited, rather than 3M's plausible allegations, "a federal court would lose the opportunity to adjudicate that defense—a result that the federal officer removal statute prohibits." *Express Scripts*, 119 F.4th at 193. Instead,

the rule is that "if even a morsel of contamination" at issue in a lawsuit may be from an AFFF source, the "factfinder will need to apportion the PFAS contamination between sources" and therefore federal jurisdiction is proper. *Raoul*, 111 F.4th at 849.

This case raises those same causation and apportionment issues and therefore is likewise "relating to" 3M's manufacture of MilSpec AFFF. 28 U.S.C. § 1442(a)(1). "3M's Military AFFF production is inextricably related to [Plaintiff's] general allegations of PFAS contamination, notwithstanding [Plaintiff's] attempts to draw a line between 3M's federal and non-federal work." *Maryland*, 2025 WL 727831, at *8. Simply put, "[a] disclaimer that requires a state court to determine the nexus 'between the charged conduct and federal authority' is not a valid means of precluding removal." *Id.* at *5 (quoting *Express Scripts*, 119 F.4th at 188). As the Fourth Circuit held, 3M is entitled to have the necessary factfinding and apportionment related to MilSpec AFFF occur in federal court. *Id.* at *7-8; *see Baker*, 962 F.3d at 944. As the same is true here, this case also "belong[s] in federal court." *Maryland*, 2025 WL 727831, at *7. That outcome is in accord with other courts' holdings that plaintiffs cannot evade federal officer jurisdiction over PFAS lawsuits by disclaiming relief for products made for the U.S. military. *See Albritton v. A Clemente, Inc.*, 2023 WL 2447422, at *6-7 (D.N.J. Mar. 10, 2023) (ruling that the case was "for or relating to" defendants' manufacture of products for the military during World War II irrespective of plaintiff's disclaimer of relief for such products); *Nessel*, 2021 WL 744683, at *3 (denying State of Michigan's motion to remand case about commercial "non-MilSpec" AFFF, because "[t]he Court that ultimately hears this case will likely have to engage in a detailed fact-finding process to determine whether the injuries from MilSpec and Commercial AFFF can be distinguished," and "[i]t is entirely possible that Plaintiffs' injuries occurred from . . . MilSpec AFFF").

*Maryland* is materially indistinguishable from this case. Plaintiff notes that Maryland and

South Carolina had each filed two separate PFAS lawsuits against 3M—one seeking to recover for PFAS-related injuries from AFFF, and another seeking to recover for injuries from "non-AFFF" PFAS—unlike Plaintiff which filed only one lawsuit. Pl. Mem. at 16. But that fact was immaterial to *Maryland*'s holding that 3M could remove lawsuits with AFFF disclaimers based on "*3M's* allegations that some of the PFAS contamination at issue even in the non-AFFF complaints may come from their Military AFFF production." *Maryland*, 2025 WL 727831, at *6-7 (emphasis added); *see id.* at *5 ("we must credit a *removing defendant's* theory of the case as to whether the conduct with which it has been charged is related to its federal work" (emphasis added)).

Plaintiff also quotes out of context the First Circuit's statement in *Express Scripts* that an "express disclaimer" that "explicitly renounce[s] claims upon which federal officer removal was based" can "defeat removal." 119 F.4th at 187; *see* Pl. Mot. at 8; Pl. Mem. at 8, 12. The First Circuit went on to explain that an express disclaimer *cannot* defeat removal when that would "force federal contractors to prove in state court that they were acting under the direction of the government," or "the facts of the case make it likely that the plaintiff will hold a defendant liable for its official acts." 119 F.4th at 187-188. And the First Circuit found that the plaintiff's express disclaimer there did not preclude removal because the court credited the defendant's "theory that its federal and non-federal work is indivisible." *Id*. at 194. As in *Maryland* and *Express Scripts*, Plaintiff's disclaimer here seeks to force 3M to litigate in state court its theory that PFAS from MilSpec AFFF is commingled with other alleged sources of PFAS in Plaintiff's water supply and that Plaintiff's claims therefore seek to hold 3M liable for its manufacture of MilSpec AFFF. *See id.* Therefore, under those cases, Plaintiff's disclaimer did not preclude 3M's removal.

*Maryland* is consistent with Eleventh Circuit precedent. Like the Fourth Circuit in *Maryland*, the Eleventh Circuit in *Caver* found a sufficient "nexus" between the case before it and

the removing defendant's federally directed conduct because it credited the defendant's theory of the case, finding that the defendant's "*allegations*, *if true*, would establish that the acts for which [it] is being sued . . . occurred because of [its] performance of its [federal] duties and . . . agreement with" the federal government. 845 F.3d at 1145. Likewise, the Eleventh Circuit in *Magnin* refused to credit the plaintiff's argument that the complaint was "never intended to pursue a claim" relating to the defendant's federally directed conduct. 91 F.3d at 1428 (upholding federal officer removal despite the plaintiff's "post-hoc characterization of the complaint" to disavow allegations that the plaintiff had acted under federal office).

Plaintiff urges the Court to reject the Fourth Circuit's reasoning in *Maryland* (which built on First and Seventh Circuit precedents) to adopt the reasoning of certain district courts that have given dispositive effect to disclaimers of AFFF-related relief (Pl. Mem. at 14), but Plaintiff provides no good reason to do so. These cases are inconsistent with the recent appellate decisions in *Maryland* and *Express Scripts*, which this Court should follow.[8]

### 2.    3M's Theory Of Removal Based On MilSpec AFFF Is Connected With The "Heart" Or "Gravamen" Of The Complaint's Allegations.

Although Plaintiff's complaint attributes the PFAS in its drinking water supply to releases from upriver industrial facilities, 3M's theory that MilSpec AFFF contributed to the alleged PFAS

---

[8] Several of the cited district-court cases (*Connecticut*, *New Hampshire*, *Maine*) are pending on appeal; the two cases out of district courts in the First Circuit (*New Hampshire* and *Maine*) were effectively abrogated by the First Circuit's *Express Scripts* decision; another (*Connecticut*) relied on those wrongly decided cases; and one decision (*Illinois*) was upheld on appeal by the Seventh Circuit only because the plaintiff conceded (unlike Plaintiff here) that it could not obtain *any* recovery from 3M if the alleged PFAS was commingled with PFAS from MilSpec AFFF. *See infra* at 21-22. Plaintiff also cites *Young v. Tyco Fire Products*, 2022 WL 486632 (9th Cir. Feb. 17, 2022), but that case is distinguishable. There, the plaintiff was a civilian firefighter who was directly exposed to PFAS-containing AFFF over a 14 year career. The removing defendant alleged that the plaintiff's injuries were caused by ingestion of water allegedly contaminated with PFAS deriving from MilSpec AFFF. *Id.* at *1. However, that was a different mode of PFAS exposure than the one the plaintiff alleged and was substantially more tenuous and conclusory than 3M's plausible allegations here (supported by the Declaration of its expert).

contamination nonetheless relates to the "gravamen" and "heart" of Plaintiff's claims (contrary to Plaintiff's arguments). *Georgia v. Meadows*, 88 F.4th 1331, 1344 (11th Cir. 2023).

The "gravamen" or "heart" of Plaintiff's claims here is that 3M and other Defendants caused PFAS contamination of Plaintiff's drinking water supply. Each separate count of the complaint makes clear Plaintiff's claim that Defendants caused PFAS contamination of the water supply. *See, e.g.*, Compl. ¶¶ 209-210 ("Defendants owed a duty to Plaintiff . . . to exercise reasonable care in their manufacturing and marketing procedures . . . to prevent the discharge of toxic PFAS chemicals into the Plaintiff's source water supply" and "Defendants breached their duty"); *id.* ¶ 215 ("Defendants have created a public nuisance by failing to prevent the contamination of . . . Plaintiff's source water supply . . . with Defendants' PFAS"); *id.* ¶ 238 ("Defendants' intentional acts in manufacturing, supplying, using and/or discharging PFAS and/or products and waste containing or degrading into PFAS, with full knowledge that these toxins would contaminate Plaintiff's source water supply, caused an invasion of Plaintiff's possessory interest"). The alleged PFAS contamination is the claimed injury that 3M allegedly caused and the basis for Plaintiff's requests for damages and other relief. *See id.* ¶ 31 (seeking damages "to remove all PFAS from drinking water" and an injunction "compelling the Defendants to remediate their contamination and prevent additional releases of PFAS"). 3M's theory that PFAS in Plaintiff's water supply includes PFAS from MilSpec AFFF thus directly relates to Plaintiff's claims and requests for relief.

Plaintiff cannot prevent 3M from removing this case based on that theory simply by pleading *some* possible sources of PFAS (manufacturing facilities), while omitting others (military bases and airports using MilSpec AFFF) when, crediting Plaintiffs' theory, PFAS from all of those sources would be comingled in its water supply. To hold otherwise would violate the rule that

"[p]laintiffs cannot decide what defense Defendants might present." *Nessel*, 2021 WL 744683, at *3; *see Maryland*, 2025 WL 727831, at *5 ("[W]e look to a defendant's well-pleaded facts of removal to see if it is entitled to a federal forum despite the nonfederal cast of the complaint." (internal quotation marks omitted). 3M is entitled to present its theory of alternate causation, which must be credited in assessing 3M's removal of this case. *See Acker*, 527 U.S. at 432.

*Meadows* is consistent with that well-established rule. *Meadows* involved the state criminal prosecution of former White House Chief of Staff Mark Meadows for election interference under Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act. To "define Meadows's section 1442(a)(1) 'act' underlying the RICO charge," the court looked to the "'heart' or 'gravamen' of Georgia's indictment." 88 F.4th at 1344. The court concluded that the "'heart' of Meadows's conduct" was "conspiring to 'unlawfully change the outcome of the election in favor of Trump.'" *Id*. at 1345. And the court held that such conduct was not related to Meadows's federal office, and could not support removal, because the White House Chief of Staff's official duties do not extend to administering state elections or campaigning on behalf of a political candidate. *Id*. at 1346-1348. *Meadows* fully supports 3M's removal under § 1442(a)(1): the "heart" of 3M's alleged conduct was manufacturing and supplying PFAS and PFAS-containing products that have allegedly contaminated Plaintiff's water supply, and (in contrast to Meadows) 3M plausibly alleged that some of that conduct was done pursuant to federal authority.

The Eleventh Circuit's reference to the "gravamen" and "heart" of the complaint in affirming remand in *State v. Meadows* thus does not warrant remand here and in fact is consistent with *Maryland* and with 3M's removal of this case. Plaintiff mistakenly argues (Pl. Mem. 10, 17) that *Meadows* is inconsistent with the well-established rule that the Court must credit 3M's plausible removal allegations. *See supra* at 8, 11. In *Meadows*, the Eleventh Circuit refused to

"rubber stamp Meadows's *legal opinion* that the President's chief of staff has unfettered authority" related to supervision of state elections and campaign-related political activity; refused "blindly to accept an expansive proclamation of executive power," *id*.; and found that "Meadows's theory of the case *is not plausible*." 88 F. 4th at 1346 (emphases added). 3M is not asking the Court to rubber stamp an implausible legal opinion. 3M's theory relates to the *facts* concerning the nature and sources of PFAS in Plaintiff's water supply. And 3M's Notice of Removal *plausibly* alleged facts supporting its theory that PFAS from MilSpec AFFF are commingled with other alleged PFAS sources (facts that are further supported by the Declaration of 3M's expert). NOR ¶¶ 28-36; Decl. ¶¶ 11-15, 19-25. The Court must credit those plausible allegations to find that 3M properly removed this case. *Maryland*, 2025 WL 727831, at *6. *Meadows* does not say otherwise.[9]

### 3. 3M Adequately Alleged That PFAS In Plaintiff's Water Supply Derived At Least In Part From 3M's MilSpec AFFF Products.

To the extent that Plaintiff challenges 3M's removal of this case on the basis that 3M supposedly has failed to offer evidence supporting its theory of removal (*see* Pl. Mot. 5), Plaintiff's challenge fails for two reasons. First, Plaintiff invokes the wrong legal standard. 3M was not required to provide affirmative evidence supporting the allegations in its Notice of Removal. 3M was permitted to remove the case based on its "plausible allegations" of federal jurisdiction. *Dart Cherokee,* 574 U.S. at 89; *see also* 28 U.S.C. § 1446(a) (requiring only a "short and plain statement of the grounds of removal"). Second, any challenge to 3M's allegation that MilSpec AFFF plausibly contributed to PFAS in Plaintiff's water supply is refuted by the attached Declaration from 3M's expert showing that PFAS in Plaintiff's water supply derived at least in part from MilSpec AFFF use at Fort Gordon, the Augusta Regional Airport, and the Savannah International

---

[9]    Plaintiff additionally relies on the remand order in *Town of Pine Hill v. 3M Co., et al.*, No. 2:24-cv-00284 (N.D. Ala.), but that order—issued prior to the Fourth Circuit's decision in *Maryland*—was wrongly decided, it misapplied *Meadows*, and 3M is appealing it.

Airport sites. *See* Decl. ¶¶ 11-15, 19-25. Plaintiff argues that 3M did not allege that it supplied those facilities with AFFF (*see* Pl. Mem. at 2), but that is incorrect. 3M's Notice of Removal plausibly alleged that 3M's MilSpec AFFF products over time were used at military bases and airports across the United States including in Georgia. NOR ¶¶ 28-29; *see also supra* at 7 n.5 & Exhibit 3. 3M's Notice of Removal and the Declaration even specifically identify 3M sales records showing that 3M supplied MilSpec AFFF to Fort Gordon and the Augusta Regional Airport. *See* NOR ¶ 32; Decl. ¶¶ 19. Those allegations are sufficient for federal officer removal.

## C.    3M Has Asserted A "Colorable" Federal Government Contractor Defense.

3M also adequately alleged a "colorable" government contractor defense. *Caver*, 845 F.3d at 1145. A federal defense is colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Moore v. Elec. Boat Co.*, 25 F.4th 30, 37 (1st Cir. 2022) (internal quotations omitted). Only a colorable federal defense is required because a defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407; *see Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) ("Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" (quoting *Willingham*, 395 U.S. at 409)).

Here, 3M adequately alleged a (more than) colorable federal government contractor defense by pleading each element of the defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). The Notice of Removal alleged that (1) 3M made PFAS-containing AFFF pursuant to a MilSpec approved by the U.S. military, (2) 3M's AFFF conformed to the MilSpec, and (3) the military knew the potential hazards of PFAS-containing AFFF yet continued to buy and use the products. *See* NOR ¶¶ 35-43; *see also Harduvel v. Gen. Dynamics Corp.*, 878 F.2d

1311, 1315-1322 (11th Cir. 1989) (discussing *Boyle*). Courts have held that MilSpec AFFF manufacturers have a colorable federal defense based on such allegations. *See, e.g.*, *Nessel*, 2021 WL 744683, at *4; *In re AFFF* , 2019 WL 2807266, at *2-3; *Ayo*, 2018 WL 4781145, at *7-15.

### 1. 3M May Assert Its Federal Defense Related to MilSpec AFFF Irrespective Of Plaintiff's Alleged Disclaimer.

Just as Plaintiff's alleged disclaimer of relief for AFFF does not prevent 3M from showing that this lawsuit is "relating to" 3M's manufacture of MilSpec AFFF, the alleged disclaimer also does not deprive 3M of its federal defense. For the reasons discussed *supra*, regardless of the alleged disclaimer, 3M may raise its government contractor defense to limit any damages award for Plaintiff's state-law claims to the extent that any PFAS in Plaintiff's water supply derived from MilSpec AFFF. *See Maryland*, 2025 WL 727831, at *8 (ruling that it is "misguided" to reject the defense based on "disclaimers"); *see also Boyle*, 487 U.S. at 504 (holding that state law is "pre-empted and replaced" by government contractor defense). 3M also will raise its government contractor defense relating to MilSpec AFFF to the extent that Plaintiff pursues its request for injunctive relief, as it would be practically impossible for 3M to abate only PFAS contamination deriving from non-AFFF sources. Additionally, 3M will assert the defense every time it seeks to show that PFAS contamination was caused, at least in part, by MilSpec AFFF.

The Seventh Circuit's recent decision in *Raoul*  is particularly instructive. There, as here, 3M asserted that alleged PFAS may have stemmed at least in part from a military facility where MilSpec AFFF was used. Given these allegations, the Seventh Circuit recognized that "the government contractor defense could apply . . . even though the [plaintiff's] complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF." 111 F.4th at 848. The Seventh Circuit cited its decision in *Baker*, where it rejected the plaintiffs' attempt to disclaim any of their personal injuries stemming from the defendants' production of chemicals from its work

for the government. 962 F.3d at 945 n.3. Under *Baker*, the Seventh Circuit explained, when an alleged injury may have been caused by "PFAS from both" a non-AFFF PFAS source and from a MilSpec AFFF source, "a factfinder would need to apportion the contamination between that stemming from the [non-AFFF] sources (which would not be subject to the government contractor defense) and that sourced from AFFF (which would potentially be subject to the defense)." 111 F.4th at 848. The dispute over whether the PFAS arose from products that 3M made for the government is "another example of a difficult causation question that a federal court should be the one to resolve." *Id*. at 849; *see Baker*, 962 F.3d at 945 n.3. *Raoul* affirmed the district court's remand order *only* after Illinois "clearly and unequivocally conceded at oral argument that it would *not* seek relief against 3M for mixed PFAS contamination—in other words, PFAS contamination arising from both" MilSpec AFFF and non-AFFF sources. *Id.* ("If *even a morsel of contamination* is not from" a non-AFFFF source, "the State's recovery is barred." (emphasis added)).

Unlike the plaintiff in *Raoul*, Plaintiff here has *not* "clearly and unequivocally" stated that it will not "seek relief against 3M for mixed PFAS contamination." *Raoul*, 111 F.4th at 849. Given 3M's plausible allegations, it is difficult to imagine how Plaintiff could even do so. 3M's Notice of Removal alleged that some PFAS chemicals used in MilSpec AFFF are identical to those deriving from other sources. NOR ¶ 9. 3M also plausibly alleged that PFAS from MilSpec AFFF is commingled in Plaintiff's water supply with PFAS from other alleged sources. *Id*. ¶¶ 36-37. As Plaintiff seeks damages and injunctive relief to address the PFAS in its water supply that 3M has alleged to be commingled with PFAS from MilSpec AFFF, Plaintiff necessarily is seeking relief for "mixed PFAS contamination." *Raoul*, 111 F.4th at 849. Accordingly, Plaintiff's purported disclaimer does not obviate 3M's federal defense.

**2.    3M's Allegations About Its Manufacture Of MilSpec AFFF Are Sufficient To Plead The Elements Of Its Federal Defense Under *Boyle*.**

Plaintiff also argues that 3M has not adequately alleged the first element of 3M's asserted federal government contractor defense—namely, that "the United States approved reasonably precise specifications" for MilSpec AFFF. *Boyle*, 487 U.S. at 512.[10] But Plaintiff's argument is misguided. Plaintiff contends that 3M cannot establish that it made MilSpec AFFF according to "reasonably precise specifications" because the MilSpec supposedly did not mandate *which* PFAS chemicals to use in manufacturing the AFFF. Pl. Mem. at 18-19, 23-24. Plaintiff erroneously invokes the MDL court's order denying Defendants' motion for summary judgment on the merits of their federal government contractor defense. *See In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357. The MDL court's order, however, is compatible with 3M's assertion of a colorable government contractor defense under *Boyle*, for two main reasons.

First, far from rejecting 3M's ability to assert a government contractor defense, the MDL court's summary judgment ruling made clear that 3M is *entitled* to make "a full factual presentation at trial" and have its government contractor defense resolved "by a final jury verdict." *Id.* at *15; *see also id.* at *12. The Court's determination (based on an extensive record developed in the MDL) that 3M's government contractor defense raises triable issues of fact necessarily means that the defense is at least colorable for purposes of removal based on federal officer jurisdiction, *i.e.*, 3M's defense is neither "immaterial" nor "wholly insubstantial and frivolous." *Moore*, 25 F.4th at 37. 3M is entitled to present these facts, and have its federal defense decided, in federal court.

Plaintiff cites the MDL court's conclusion that the MilSpec for AFFF is not a "reasonably precise specification" for purposes of the first *Boyle* element—a conclusion that the MDL court based in part on its finding that the MilSpec "did not specify the use of a particular formula" and

---

[10]   Plaintiff does not dispute that 3M adequately pleaded the second and third *Boyle* elements.

was "not limited to" PFOA or PFOS (the specific PFAS chemicals that certain MDL plaintiffs allege to have harmed them). *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *6-8. 3M disagrees with that conclusion. *See* NOR ¶ 49. But regardless, Plaintiff's reliance on the conclusion is misplaced. The MDL court went on to find that Defendants could *alternatively* prove the first *Boyle* element by establishing at trial "the government's continuous use of the product . . . with full knowledge of its defects and risks." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *6-8. As the MDL court put it: "Where the government did not develop the product but subsequently purchased and used it, and by that use acquired full or substantially complete knowledge of its defects and risks, a contractor may satisfy the first prong of *Boyle* by showing that the government continued to use the product after acquiring full knowledge of its defects and risks." *Id.* at *4. The Eleventh Circuit has endorsed this approach, holding that "post-design, post-production evidence may fit within the *Boyle* rationale" if the government makes a "discretionary decision" to continue buying and using a product, and that decision amounts to "meaningful acceptance" of the product design. *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1353-1354 (11th Cir. 2009).

3M's Notice of Removal here plausibly alleged that the government made just such a discretionary decision to continue buying and using MilSpec AFFF for decades despite its knowledge of the alleged defects and risks of AFFF's PFAS component. NOR ¶ 49; *see id.* ¶¶ 51-52. The government in fact continued using MilSpec AFFF for decades after 3M stopped producing it around 2000, notwithstanding the EPA's announcement around the same time that PFAS in AFFF supposedly may pose the alleged environmental and human health hazards identified by Plaintiff here. *See id.* ¶ 51. Plaintiff offers no argument that 3M cannot establish *Boyle*'s first prong on the alternative, "continued use" theory endorsed by the Eleventh Circuit.

In any event, the MDL court's order on the merits of 3M's government contractor defense

is irrelevant to 3M's removal of this case under § 1442, because 3M was not required to *prove* its defense to remove these cases. Instead, 3M only needed to allege a "colorable" defense, *Willingham*, 395 U.S. at 407, based on "plausible allegation[s]," *Dart Cherokee Basin Operating*, 574 U.S. at 89; *see Cuomo*, 771 F.3d at 116. And 3M's allegations were sufficient to plead the elements of its government contractor defense for purposes of federal officer removal, *regardless* of any determination on the merits of 3M's defense such as the MDL court's summary judgment order. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 5835311, at *2-3 (N.D. Fla. Oct. 1, 2020) (upholding federal officer removals, notwithstanding same judge's prior order in the same case granting summary judgment *against* defendant on the merits of its defense, because the standard for federal removal is distinct from the standard for summary judgment). The MDL court itself has repeatedly upheld removal by MilSpec AFFF manufacturers on the basis that they had asserted a colorable federal government contractor defense. *See, e.g.*, *In re AFFF*, 2019 WL 2807266, at *3; Order at 4, *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), ECF No. 320; Order at 4-5, *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), ECF No. 325.

## II.    The Court Should Deny Plaintiff's Request For Fees Under 28 U.S.C. § 1447(c).

Because 3M properly removed this case under the federal officer removal statute, the Court should deny Plaintiff's request under 28 U.S.C. § 1447(c) for attorneys' fees. Even if the Court were to remand the case, however, the award of fees would be improper. "[C]ourts may award attorney's fees under § 1447(c) *only* where the removing party lacked an objectively reasonable basis for seeking removal," and "when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (emphasis added).

There is no question that 3M had an objectively reasonable basis to remove this case. As discussed *supra*, the weight of recent appellate court decisions strongly supports 3M's theory of

removal. *See Maryland*, 2025 WL 727831, at \*4-9; *Express Scripts*, 119 F.4th at 187-194; *Raoul*, 111 F.4th at 848-849. Those decisions have refused to give dispositive effect to disclaimers like Plaintiff's that seek to avoid removal under § 1442(a)(1). They have held that courts must credit removing defendants' theories of removal under § 1442(a)(1). And they have endorsed 3M's theory that removal is proper if 3M can plausibly allege, as it has done here, that PFAS from MilSpec AFFF is commingled with PFAS from other alleged sources at issue in the case.

## CONCLUSION

The Court should defer ruling on Plaintiff's Motion to Remand pending the JPML's ruling on 3M's motion to transfer this case to the MDL. If the Court does not defer ruling or if the JPML denies transfer, the Court should deny Plaintiff's Motion to Remand and its request for fees.

Respectfully Submitted,

Dated: March 31, 2025

By: */s/ Andrew T. Bayman*
Andrew T. Bayman
Georgia Bar No. 043342
Charles G. Spalding, Jr.
Georgia Bar No. 411926
**KING & SPALDING, LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521
Telephone: 404-572-4600
Fax: 404-572-5100
abayman@kslaw.com
cspalding@kslaw.com

*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to all counsel of record.

*/s/ Andrew T. Bayman*
Andrew T. Bayman

26