# EXHIBIT 1

# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*The Mayor & Aldermen of the City of Savannah, Ga. v. 3M Co., et al.*,<br>No. 4:25-cv-00058 (S.D. Ga.) |

## DEFENDANT 3M COMPANY'S MOTION TO TRANSFER TAG-ALONG ACTION *CITY OF SAVANNAH* TO THE *IN RE AFFF* MDL

Pursuant to Judicial Panel on Multi-District Litigation Rule 7.1(b)(i), Defendant 3M Company respectfully moves the Panel for an Order transferring the above-captioned action as a tag-along action to the United States District Court for the District of South Carolina for inclusion in MDL No. 2873. The motion is supported by the accompanying memorandum of law, exhibits (including the docket sheet and complaint), declaration, schedule of action, and proof of service.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Defendant 3M Company |
| DATED: March 25, 2025 | /s/ *Daniel L. Ring*<br>Daniel L. Ring<br>MAYER BROWN LLP<br>71 South Wacker Drive<br>Chicago, Illinois 60606<br>Tel: (312) 782-0600<br>Fax: (312) 701-7711<br>dring@mayerbrown.com<br><br>*Counsel for Defendant 3M Company* |

1

# BEFORE THE UNITED STATES JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | MDL No. 2873<br>This Document Relates To:<br><br>*The Mayor & Aldermen of the City of Savannah, Ga. v. 3M Co., et al.*, No. 4:25-cv-00058 (S.D. Ga.) |

## MEMORANDUM IN SUPPORT OF DEFENDANT 3M COMPANY'S MOTION TO TRANSFER TAG-ALONG ACTION *CITY OF SAVANNAH* TO THE *IN RE AFFF* MDL

Plaintiff The Mayor and Aldermen of the City of Savannah, Georgia ("Plaintiff") seeks in this action to hold Defendant 3M Company ("3M") and certain other Defendants liable for alleged conduct in manufacturing and supplying per- and polyfluoroalkyl substances ("PFAS"), which purportedly have contaminated Plaintiff's drinking water supply drawn from the Abercorn Creek in the Savannah River basin. *See* Compl. ¶¶ 1-14, 26-32, 194-204 (attached as Exhibit 1). As demonstrated by the Declaration of John Kondziolka, M.S. ("Kondziolka Declaration" or "Decl.") (Exhibit 2), use of PFAS-containing aqueous film-forming foams ("AFFF") has contributed to the PFAS levels in the Abercorn Creek, and in fact, there is overwhelming evidence that PFAS in the Abercorn Creek derived from AFFF use at numerous sites in and around the Savannah River. Unsurprisingly, numerous AFFF cases in the AFFF MDL concern claimed injuries from consuming the City of Savannah's drinking water, claimed PFAS contamination of nearby water supplies resulting from AFFF, or exposure to PFAS through AFFF use at nearby sites.

The Panel should transfer this case to the AFFF MDL for two reasons. *First*, this action will involve AFFF-related issues and discovery. The attached Kondziolka Declaration affirmatively establishes that the alleged PFAS contamination of Plaintiffs' water supply has resulted at least in part from use of AFFF at military facilities, airports, and other AFFF sites in

the vicinity of Plaintiff's water supply—some of which are equidistant from or even nearer to Plaintiff's water intakes that the alleged PFAS sources identified in Plaintiff's own complaint. The Panel has found that transfer to the AFFF MDL is appropriate when, as here, a party affirmatively shows that alleged PFAS contamination resulted at least in part from AFFF. *See, e.g.*, Transfer Order at 1-2, ECF No. 2679 (J.P.M.L. June 7, 2024) (transferring PFAS lawsuits related to 3M's facility in Decatur, Alabama, based on 3M's evidence that it manufactured PFAS-containing AFFF at the facility).[1] *Second*, this action involves the same drinking water supply and some of the same alleged AFFF sites that are already at issue in AFFF cases in the AFFF MDL: a number of MDL plaintiffs claim that their personal injuries purportedly resulted from consuming AFFF-contaminated City of Savannah drinking water, and many other plaintiffs were allegedly exposed to or injured by PFAS from military bases and other AFFF sites that the Kondziolka Declaration shows to have contributed to PFAS in Plaintiff's water. As those AFFF actions involve the same drinking water supply and/or the same sites of AFFF use at issue here, transfer is warranted to avoid duplicative discovery and pretrial proceedings. *See, e.g.*, Transfer Order at 1-2, ECF No. 2938 (J.P.M.L. Oct. 4, 2024) (transferring *Long* because the plaintiffs' claims arose from PFAS in groundwater that was "already at issue in the MDL").

For both those reasons, this action shares common questions of fact with the cases in the AFFF MDL, and transfer would promote the just and efficient conduct of the litigation overall.

## BACKGROUND

Plaintiff filed this action in Georgia state court on February 5, 2025, seeking to hold 3M and other Defendants liable for PFAS in its drinking water supply. Plaintiff operates a water treatment plant—the Savannah Industrial and Domestic Water Plant ("I&D Plant") in Savannah,

---

[1] Unless otherwise specified, references to "ECF No. __" are to the Panel's docket for MDL 2873.

2

Georgia. Compl. ¶ 27. The Complaint alleges that Plaintiff provides customers in Chatham County, Georgia, and Effingham County, Georgia, with drinking water that is drawn from the Abercorn Creek, a channel that is connected to the Savannah River. *Id.* ¶¶ 27, 194. The Complaint further alleges that certain Defendants including 3M manufactured PFAS, and that their PFAS was then used by other Defendants that generated industrial wastewater released into the Savannah River basin from various wastewater treatment plants, resulting in the presence of PFAS downriver in the Abercorn Creek. *Id.* ¶¶ 9-11, 33-50, 184-192. Based on those allegations, Plaintiff brings tort claims to recover damages including the costs of removing PFAS from its water supply. *Id.* ¶¶ 30-31, 205-258. The PFAS in Plaintiff's water supply allegedly include perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). *Id.* ¶ 201; *see also id.* ¶ 1 n.1. Those are among the same PFAS that have been used to make AFFF and are at issue in the AFFF MDL. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).

On March 14, 2025, 3M removed this case to the U.S. District Court for the Southern District of Georgia pursuant to the federal officer removal statute. *See* Notice of Removal ¶¶ 1-4 (attached with Exhibit 1) ("NOR"). The Notice of Removal asserted that, while Plaintiff alleges that PFAS in its water supply derived from upriver wastewater treatment facilities, PFAS in the water supply just as plausibly derived at least in part from use of "MilSpec" AFFF at military facilities and airports near the Savannah River upriver from and/or in the vicinity of Plaintiff's water intakes on the Abercorn River—including Fort Gordon (now Fort Eisenhower), the Augusta Regional Airport, and the Savannah International Airport (where the Savannah Air National Guard Base and former Travis Field are located). *Id.* ¶¶ 28-37; *see also* Kondziolka Decl., Figure 1.[2]

---

[2] 3M notified the Panel of this potential tag-along action after removing it to federal court, but the Clerk of the Panel declined to issue a Conditional Transfer Order. ECF No. 3383.

3

**ARGUMENT**

**I. The Panel Should Transfer This Case Because It Raises AFFF-Related Issues For Discovery And Pretrial Proceedings As Shown By The Kondziolka Declaration.**

Transfer to the AFFF MDL is warranted because this case raises AFFF-related issues for discovery and pretrial proceedings, as is affirmatively established by the Kondziolka Declaration. The Panel established the MDL to centralize actions involving claims and defenses related to contamination of groundwater and drinking water supplies with PFOA and PFOS resulting from use of AFFF at military bases, airports, and elsewhere. *See In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d at 1394. Since then, the Panel has transferred several cases to the AFFF MDL—even though the complaints did not expressly assert AFFF claims—because the party seeking transfer submitted evidence showing that the alleged PFAS contamination derived at least in part from AFFF. For instance, the Panel has transferred cases purportedly concerning "non-AFFF" PFAS releases from 3M's facility in Decatur, Alabama, based on evidence that 3M manufactured PFAS-containing AFFF at that facility, so any injuries due to PFAS from the facility necessarily relate in part to AFFF. *See* Transfer Order at 1-2, ECF No. 2679; *see also* Transfer Order at 1-3, ECF No. 3166 (J.P.M.L. Dec. 12, 2024) (transferring additional cases involving Decatur facility); Transfer Order at 1, ECF No. 2797 (J.P.M.L. Aug. 1, 2024) (same); Transfer Order at 1, ECF No. 1646 (J.P.M.L. Oct. 4, 2024) (transferring PFAS case related to 3M facility in Guin, Alabama, based on evidence submitted by 3M that AFFF had spilled into plaintiff's water supply from the facility).

Here, the Kondziolka Declaration establishes that AFFF will overwhelmingly be at issue in this case because numerous AFFF sites near the Savannah River contributed to the PFOA, PFOS, and/or other PFAS in Plaintiff's water supply, the Abercorn Creek. The declarant, John Kondziolka, is an environmental engineer specializing in hydrogeology with experience in evaluating fate and transport of PFAS. *See* Decl. ¶ 1. He concludes that "the available evidence

4

confirms *to a reasonable degree of scientific certainty* that aqueous film-forming foams (AFFF) released within the Savannah River watershed . . . have contributed to PFAS detected in the water supply used by the City of Savannah . . . ." *Id*. ¶ 2 (emphasis added); *see id*. ¶ 25. He identifies multiple locations in the Savannah River basin where AFFF has been used, and where AFFF discharges contributed to the PFAS in Plaintiff's water supply—in fact, many of those sites are approximately the same distance away or closer than the wastewater facilities identified by Plaintiff's complaint as the sources of PFAS in its water supply. *Compare* Compl. ¶¶ 34, 49, 186-193 (identifying wastewater treatment plants in Georgia and South Carolina where PFAS discharges allegedly flow to Plaintiff's water supply and are the claimed basis for certain Defendants' liability), *with* Decl., Figure 1 (showing confirmed and probable AFFF sites in proximity to Abercorn Creek that are the same distance from or closer to Abercorn Creek as compared to wastewater treatment plants named in the complaint). This case thus will involve issues and discovery related to AFFF sites just as much as it involves issues and discovery related to PFAS releases from the wastewater treatment plants identified in the complaint.

Specifically, the Kondziolka Declaration identifies the following as sites where AFFF use contributed or probably contributed to the alleged PFAS contamination of Plaintiff's water supply:

- ***U.S. Department of Energy ("DOE") Savannah River Site "D Area" and Other Areas.*** The U.S. DOE Savannah River Site in South Carolina is a former nuclear weapons manufacturing facility upriver from Plaintiff's water intakes. Decl. ¶ 7 & Figure 1. The "D Area" of the site is a confirmed location adjacent to the Savannah River where AFFF historically has been used for firefighting and fire training, and where PFAS including PFOS have been detected in both the groundwater and the surface water downgradient from the area. *Id*. ¶¶ 6-9. The groundwater plume there extends toward the Savannah River.

5

*Id*. ¶ 8. The surface waters where PFAS have been detected similarly flow toward the Savannah River. *Id*. ¶ 9. Given that information, as stated in the Kondziolka Declaration, "it is true to a reasonable degree of scientific certainty that AFFF discharged . . . at . . . the US DOE Savannah River Site . . . contributed PFAS to Plaintiff's drinking water supply." *Id*. ¶ 25. In addition, there are at least nine other locations at the DOE facility (outside of the "D Area") that have been identified as probable or potential sites of historical AFFF use and storage near surface water bodies or ditches that drain toward the Savannah River, including a firefighting training facility with PFOS detected in sediment that is another probable source of PFAS in the Savannah River and Plaintiff's water supply. *Id*. ¶ 10.

- *Augusta Regional Airport.* The Augusta Regional Airport in Augusta, Georgia, is a "Part 139" airport that was required to maintain an AFFF supply and where AFFF releases are confirmed to have occurred during fire incidents and fire training. Decl. ¶ 11. The airport is located directly adjacent to the Savannah River upriver from Plaintiff's water intakes. *See id.*, Figure 2. Confirmed and probable AFFF releases at reported fire incidents (including airplane crashes near the airport) and fire trainings would have caused PFAS to migrate by groundwater and surface water pathways to the Savannah River. *Id*. ¶¶ 12-15, 18. Consistent with that evidence, PFAS including PFOS has been detected in groundwater wells adjacent to the airport. *Id*. ¶ 14. Thus, as stated in the Kondziolka Declaration, "it is true to a reasonable degree of scientific certainty that AFFF discharged . . . at . . . Augusta Regional Airport . . . contributed PFAS to Plaintiff's drinking water supply." *Id*. ¶ 25.

- *Innovative Chemical facility.* An industrial facility owned and operated by Innovate Chemical Technologies in Augusta, Georgia, is also a confirmed site where AFFF was stored and released. Decl. ¶¶ 16-17. That facility like the Augusta Regional Airport is

6

located directly adjacent to the Savannah River upstream of Plaintiff's water supply. *Id.*, Figure 2. Photographs of one accidental release of AFFF at the facility specifically show AFFF discharging to an off-site storm drain. *Id.* ¶ 17; *see* Georgia Environmental Protection Division Complaint Tracking System, https://cts.gaepd.org/Complaint/93161. Such releases would have resulted in PFAS migrating to the Savannah River. Decl. ¶ 17.

- *Fort Gordon (now Fort Eisenhower).* Fort Gordon is a U.S. Army installation similarly located in Augusta, Georgia, near the Savannah River, upriver from Plaintiff's water supply. *See* Decl. ¶ 19 & Figure 1. Fort Gordon has hosted various military training activities since the 1950s. *Id.* ¶ 19. Fort Gordon historically was supplied with AFFF, and there are a number of probable sites of historical AFFF use, storage, and discharge at Fort Gordon including a number of fire stations and a fire training area. *Id.* Consistent with AFFF discharge at those sites, elevated levels of PFAS including PFOS have been detected in the groundwater at the sites. *Id.* ¶ 20. Both groundwater and surface water at Fort Gordon flow to tributaries of the Savannah River, so any PFAS in the groundwater or surface water runoff that had resulted from AFFF discharges at Fort Gordon ultimately would have contributed to PFAS in Plaintiff's water supply downriver from Fort Gordon. *Id.* ¶ 21.

- *Savannah Air National Guard Base ("Savannah ANGB") and Savannah International Airport (formerly Travis Field).* A number of additional confirmed and probable sites of AFFF use are located downriver of Abercorn Creek on the Savannah River, including the Savannah ANGB and Savannah International Airport, where PFAS including PFOS have been detected in stormwater discharges. Decl. ¶ 23 & Figure 1. As the Kondziolka Declaration explains, AFFF releases at those downriver sites likely impacted Plaintiff's water supply in two different ways. *First*, due to the location of the Abercorn Creek near

7

the Savannah River delta, AFFF releases at locations downriver from Abercorn Creek also likely have contributed to PFAS in Plaintiff's water supply. *Id*. ¶ 22. Specifically, the flow of water in the Abercorn Creek near Plaintiff's water intake reverses twice a day depending on the ocean tides, and modelling of the surface water flow there has shown that downriver contaminants will reach the Abercorn Creek. *Id*.[3] AFFF discharged at the Savannah ANGB or Savannah International Airport would drain to the Savannah River where the tides would cause PFAS to migrate upstream to Plaintiff's water intakes. *Id*. ¶ 23. Second, Plaintiff maintains groundwater wells for use as a backup water supply, and three of those wells are located *directly on* the Savannah ANGB property (with the fourth located directly adjacent to the property). *Id*. ¶ 24. The immediate proximity of those backup groundwater wells to known AFFF releases at the Savannah ANGB and Savannah International Airport means that any investigation of PFAS impacting Plaintiff's water supply would need to consider the historical impact of AFFF use at those sites on Plaintiff's groundwater wells and on Plaintiff's costs and expenses for investigating, monitoring, and remediating PFAS. *Id*.

The Kondziolka Declaration shows that *all* those AFFF sites are at issue in this case. Decl. ¶ 25.

Because the Kondziolka Declaration affirmatively establishes that AFFF is at issue, this case necessarily will involve discovery and motion practice related to AFFF. The AFFF-related issues here include the extent to which the nearby use of AFFF (as opposed to non-AFFF PFAS sources) contributed to the PFAS levels in Plaintiffs' water supply, and whether 3M (as opposed to other Defendants) manufactured the AFFF products whose use has impacted Plaintiffs' water supply. Those issues overlap fact and expert discovery taking place in the MDL—such as

---

[3] Plaintiff's own Complaint acknowledges that "water flow[s] between [Abercorn Creek] and the Savannah River in both directions depending on the tides," among other factors. Complaint ¶ 194.

8

discovery related to AFFF fate and transport and AFFF product identification—so transfer is necessary to avoid duplicative discovery. At the same time, the Complaint raises the common fact issues that the Panel identified in its initial Transfer Order, including "the toxicity of PFOA and PFOS and their effects on human health; the chemical properties of these substances and their propensity to migrate in groundwater supplies; the knowledge of the AFFF manufacturers regarding the dangers of PFOA and PFOS; their warnings, if any, regarding proper use and storage of AFFFs; and to what extent, if any, defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products." *In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d at 1394; *see, e.g.*, Compl. ¶ 114 (alleging that PFAS are persistent, bioaccumulate, and migrate through surface water and groundwater); *id*. ¶¶ 155-159 (alleging that Defendants knew or should have known of claimed dangers of PFAS but continued to supply or use them). Further, 3M will be entitled to pursue further discovery related to AFFF sites to "raise contamination from AFFF sources as a 'defense or an alternate theory'" of causation—for instance, to assert a government contractor defense to any damages resulting from AFFF use by the U.S. military. Transfer Order at 4 n.5, ECF No. 1020 (J.P.M.L. June 7, 2021) (transferring State of Michigan's putative "non-AFFF" action because, "[b]esides the probability of duplicative discovery involving the same allegedly contaminated groundwater, . . . defendants may raise contamination from AFFF sources as a 'defense or an alternate theory'" (quoting *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021))). That defense will give rise to additional common issues warranting transfer. *See In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d at 1394 (noting that AFFF manufacturers' "identical government contractor defenses" supported transfer of AFFF actions).

Accordingly, this case will share common factual questions with the actions in the MDL that likewise involve issues concerning contamination of drinking water supplies with PFAS from

AFFF, and the Panel should transfer this case so that those common questions may be litigated in the MDL. It is no obstacle to transferring this case to the MDL that the Kondziolka Declaration does not rule out that non-AFFF PFAS sources (in addition to AFFF) also contributed to the PFAS in Plaintiffs' water supply: the Panel has repeatedly transferred cases involving putative non-AFFF PFAS claims so long as the cases also involved at least some PFAS deriving from AFFF. *See, e.g.*, Transfer Order at 2, ECF No. 1646 ("That the State's claims encompass both AFFF and non-AFFF sources of contamination does not eliminate the common factual questions and discovery relating to PFAS and AFFF that *State of Wisconsin* will share with the actions in the MDL."). "Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005). It is also no obstacle to transfer that Plaintiffs here purportedly disclaim any relief related to AFFF. Compl. ¶ 20. Regardless of the purported disclaimer, this action will involve AFFF-related issues in light of the information in the Kondziolka Declaration. The Panel thus has transferred cases to the MDL involving similar alleged disclaimers of AFFF-related relief. *See, e.g.*, Transfer Order at 1-2, ECF No. 2679 (transferring cases related to 3M's Decatur facility even though plaintiffs "disclaim[ed] any liability" for AFFF); Transfer Order at 2-3, ECF No 1927 (J.P.M.L. June 5, 2023) (transferring State of Illinois's putative "non-AFFF" case).

## II. The Panel Should Transfer This Case Because It Involves The Same Water Supply And Some Of The Same Sites At Issue In AFFF Cases Pending In the MDL.

Transfer of this case to the AFFF MDL is also independently warranted by the fact that it relates to the exact same drinking water supply at issue in AFFF cases already pending in the MDL, as well as to some of the same sites of AFFF use at issue in MDL cases. Time and again, the Panel has transferred cases to the AFFF MDL, even though they have not contained any AFFF claims, so long as they have related to alleged PFAS contamination of the same drinking water supply at

10

issue in a case already proceeding in the MDL. *See, e.g.*, Transfer Order at 1-2, ECF No. 2938 (transferring *Long* because plaintiffs sought to recover for alleged PFAS contamination of groundwater in Canton, Missouri, but the City of Canton had filed a lawsuit in the MDL "alleging that the contaminated groundwater [in Canton]—the same groundwater at issue in *Long*—was contaminated by use or disposal of AFFFs," so "*Long* substantially overlaps with the AFFF claims in the MDL and necessarily will involve common questions of fact regarding, for instance, the nature of the alleged PFAS contamination and its source(s)"); Transfer Order at 2-3, ECF No. 1927 (transferring State of Illinois's putative "non-AFFF" case because the complaint "identifies specific 'community water supplies' (CWS) that are at issue in the MDL," and finding that that overlap with the MDL was "*sufficient*" to warrant transfer of the case (emphasis added)).[4] The Panel also has frequently transferred cases upon noting that they involved the same AFFF sites already at issue in cases in the MDL. *See, e.g.*, Transfer Order at 2, ECF No. 650 (J.P.M.L. June 2, 2020) (transferring *State of New Mexico* in part because "one of the two Air Force bases named in the State's complaint is directly at issue in the MDL"); Transfer Order at 1, ECF No. 384 (J.P.M.L. Apr. 2, 2019) (transferring *State of New York* and *State of Ohio* in part because "at least three contamination sites identified in these complaints . . . already are at issue . . . in the MDL").

Under those precedents, this case warrants transfer because Plaintiff seeks to recover for alleged PFAS contamination of the City of Savannah water supply, and—as shown below—that same water supply is already at issue in AFFF cases in the MDL, as are many AFFF sites identified

---

[4] *See also* Transfer Order at 1-2, ECF No. 2286 (J.P.M.L. Jan. 31, 2024) (transferring *Suessmann* because of overlap with AFFF cases in MDL filed by New Jersey municipalities); Transfer Order at 1-2, ECF No. 1927 (transferring *Broy* based on overlap with City of Corona, California's AFFF case); Transfer Order at 1-2, ECF No. 691 (J.P.M.L. Oct. 5, 2020) (transferring New Jersey American Water Company's putative "non-AFFF" case because it involves one of the same water supplies as New Jersey American Water Company's AFFF case pending in the MDL).

11

by the Kondziolka Declaration as sources of PFAS in the City of Savannah water supply.

A number of cases currently pending in the AFFF MDL have been brought by individual plaintiffs alleging personal injuries that purportedly resulted from consumption of the City of Savannah's drinking water supplied by Plaintiff. For instance, the complaint in *Allan v. 3M Company, et al.*, No. 2:24-cv-07344 (D.S.C.)—which is a case pending in the AFFF MDL—expressly alleges that the plaintiff "throughout his life . . . has received and ingested fluorochemical-contaminated water from municipal water providers including . . . Savannah I&D (GA)"; that the alleged contamination of the City of Savannah water supply was the "result of . . . use of Defendants' AFFF products," and that the plaintiff's ingestion of such drinking water caused his claimed medical condition (ulcerative colitis). *Allan* Compl. ¶¶ 170-171, 178, No. 2:24-cv-07344, ECF No. 1 (attached as Exhibit 3). In addition, based on information disclosed in plaintiff fact sheets submitted in the AFFF MDL, undersigned counsel for 3M has identified at least six additional individual plaintiffs with AFFF claims pending in the MDL who are asserting that consumption of the City of Savannah's drinking water supply is the source of their claimed injuries and damages purportedly resulting from PFAS-containing AFFF.

Because Plaintiff's action seeks to recover for alleged contamination of the City of Savannah water supply and that is the same drinking water supply at issue in *Allan v. 3M Company, et al.* and other cases pending in the AFFF MDL, the Panel should transfer this case to the AFFF MDL so that it may proceed alongside those other cases related to the same water supply. As the Panel has concluded in such circumstances, transfer is "necessary to avoid overlapping discovery and duplicative pretrial proceedings." Transfer Order at 2, ECF No. 1927. Discovery in this case will "necessarily" overlap MDL discovery—whether already undertaken or at issue now and going forward in the MDL—concerning "the nature of the alleged PFAS contamination and its

12

source(s)." Transfer Order at 2, ECF No. 2938. "It would be inefficient for these actions to proceed separately and potentially prejudicial to the parties." Transfer Order, ECF No. 691.

Moreover, a number of additional cases pending in the AFFF MDL have been brought by plaintiffs bringing AFFF claims related to one or more of the AFFF sites in the Savannah River basin identified by the Kondziolka Declaration as sources of PFAS in Plaintiff's water supply. Specifically, plaintiffs in the MDL have claimed injuries and damages related to AFFF use at the Augusta Regional Airport (*see* Decl. ¶¶ 11-15), Fort Gordon (*see id.* ¶¶ 19-21), and the Savannah ANGB (*see id.* ¶ 23), among locations in and around Savannah, Georgia. For instance, in Augusta, Georgia's pending AFFF case in the MDL, the complaint seeks to recover for claimed contamination of drinking water supplies and other natural resources resulting from use of PFAS-containing AFFF at the Augusta Regional Airport and Fort Gordon. *See* Compl. ¶¶ 3-4, 9-10, 15, 21-22, 90, 139, *Augusta, Ga. v. 3M Co., et al.*, No. 2:23-cv-02609 (D.S.C.), ECF No. 1 (attached as Exhibit 4). Numerous individual plaintiffs also have filed claims pending in the MDL in which they allege that they were exposed to and injured by PFAS-containing AFFF through their employment as firefighters at the Augusta Regional Airport, Fort Gordon, or the Savannah ANGB. *See, e.g.*, Am. Compl. ¶¶ 109-112, *Barnes v. 3M Co., et al.*, No. 2:23-cv-01105 (D.S.C.), ECF No. 7 (attached as Exhibit 5) (alleging exposure and injury from AFFF while a firefighter at the Augusta Regional Airport); Compl. ¶¶ 91, 95, *Mickles v. 3M Co., et al.*, No. 2:23-cv-02019 (D.S.C.), ECF No. 1 (attached as Exhibit 6) (alleging exposure and injury from AFFF while a firefighter at Fort Gordon and at the 165th Airlift Wing in Savannah, Georgia (*i.e.*, the Savannah ANGB)).[5]

---

[5] Additional cases pending in the AFFF MDL have been filed by individual plaintiffs alleging exposure and injury from AFFF while working as civilian firefighters in Savannah, Georgia.

13

As the Kondziolka Declaration shows that AFFF use at sites already at issue in the MDL contributed to the alleged PFAS contamination of the City of Savannah water supply at issue in this case, transfer of this case to the MDL is warranted so that common discovery related to those sites may proceed in a coordinated manner in the MDL. *See, e.g.*, Transfer Order at 1, ECF No. 384 (transferring *State of New York* and *State of Ohio* because they involved "at least three contamination sites . . . already at issue in actions . . . in the MDL," and therefore "[t]ransfer of these actions . . . will reduce the potential for duplicative discovery and pretrial practice")

\* \* \* \* \*

Both because AFFF is at issue in this case, and because this case relates to alleged contamination of the same drinking water supply as well as some of the same AFFF sites and sources at issue in AFFF cases pending in the MDL, transfer of this case will "promote the just and efficient conduct of the litigation." *E.g.*, Transfer Order at 1, ECF No. 3166 (transferring *Muscle Shoal*s and *Colbert County* because 3M had shown that AFFF would be at issue and because they overlapped cases previously transferred).

## CONCLUSION

The Panel should transfer *City of Savanah* to the AFFF MDL pending in the U.S. District Court for the District of South Carolina.

DATED: March 25, 2025

Respectfully submitted,

By: /s/ Daniel L. Ring
Daniel L. Ring
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
dring@mayerbrown.com

*Attorney for Defendant 3M Company*

14