**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, GEORGIA, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:25-cv-00058 |
| | ) | |
| vs. | ) | |
| | ) | |
| 3M COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO REMAND**</u>

COMES NOW, The Mayor and Aldermen of the City of Savannah, Georgia ("Savannah") and respectfully submits this Supplemental Brief in Support of Savannah's Motion to Remand, pursuant to this Court's post-hearing order on supplemental briefing (ECF No. 75):

1.      Savannah's Motion to Remand raises both "facial" and "factual" attacks on 3M's federal officer removal theory. *Cf. Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) ("[A] plaintiff's motion to remand may raise either a facial attack or a factual attack on the defendant's jurisdictional allegations."); *Grosch v. Tyco Fire Prods. LP*, No. CV-23-01259-PHX-DWL, 2023 WL 5993548 (D. Ariz. Sept. 15, 2023) (finding federal officer removal improper for AFFF manufacturer on both facial and factual grounds).

2.      Under Savannah's "facial" attack, 3M's theory of removal fails even when taking all the factual allegations in the Notice of Removal as true. *See Leite*, 749 F.3d at 1121–22; *see also Mays v. City of Flint, Mich.*, 871 F.3d 437, 442 (6th Cir. 2017) (analyzing "facial attack" in the context of federal officer removal). In short, even if all the factual allegations in 3M's Notice of Removal are true, remand is still warranted because 3M's manufacture and supply of MilSpec AFFF is not the "heart" or "gravamen" of Savannah's claims, or even one of the "actions for which

1

[3M] is being sued." *See Town of Pine Hill, Alabama v. 3M Co.*, No. CV 2:24-00284-KD-N, 2025 WL 733100, at *4–5 (S.D. Ala. Feb. 14, 2025), *report and recommendation adopted*, No. CV 2:24-00284-KD-N, 2025 WL 728461 (S.D. Ala. Mar. 6, 2025) (citing *State v. Meadows*, 88 F.4th 1331 (11th Cir. 2023); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135 (11th Cir. 2017)).[1]

3.    Under Savannah's "factual" attack, 3M's removal fails because it has not offered "competent proof" to support its factual theory of removal and has not established the elements of federal officer jurisdiction "by a preponderance of the evidence." *See Meadows*, 88 F.4th at 1348; *Leite*, 749 F.3d at 1122.

4.    This Supplemental Brief addresses the questions posed by this Court regarding Savannah's "factual" attack and 3M's burden of "competent proof" under *Meadows* (ECF No. 75) and explains why 3M has failed to meet that burden—despite having numerous opportunities to supplement the record with evidence that 3M admits is in its possession.

5.    This Supplemental Brief also explains why, even accepting 3M's factual assertions and evidentiary submissions as true, 3M's removal still fails under Savannah's "facial" attack.

## I.    Remand is Warranted Under Savannah's "Factual" Attack

### A.    Savannah is Not Required to Introduce Extrinsic Evidence in Order to Raise a "Factual" Attack and Trigger 3M's "Competent Proof" Standard.

6.    As an initial matter, Savannah was not required to introduce extrinsic evidence in order to raise a "factual" attack and trigger 3M's "competent proof" standard under *Meadows*.

7.    In *Meadows*, the Eleventh Circuit described a removing defendant's burden of proof under the federal officer removal statute as follows:

> As the removing party, Meadows bears the burden of proof. *See Leonard*, 279 F.3d at 972. Meadows was obligated to support the factual averments linking his conduct

---

[1] In addition, even taking 3M's factual allegations as true, 3M has not plausibly established the "acting under" or "colorable federal defense" elements of federal officer removal.

and his office "by competent proof." *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)); *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014) (applying the "competent proof" standard to federal-officer removal).

*Meadows*, 88 F.4th at 1348.

8.    Nothing in *Meadows* states that the "competent proof" standard is only triggered after the plaintiff offers extrinsic evidence challenging the removing party's factual allegations.[2]

9.    To the contrary, the cases cited by *Meadows* make clear that a "factual" attack to removal jurisdiction does *not* require the plaintiff to introduce extrinsic evidence in order to trigger the removing party's burden of "competent proof."

10.    For example, the sentence that *Meadows* quotes from *United Food* (in turn quoting from *McNutt*) states: "if the averring party's allegations of jurisdictional facts are challenged by its adversary in *any appropriate* manner, the averring party must support them by competent proof." *United Food*, 30 F.3d at 301 (alterations omitted) (quoting *McNutt*, 298 U.S. at 189).

11.    In fact, *McNutt* recognized that, even if a plaintiff fails to challenge the removing party's factual allegations in support of removal, "the court may still insist that the jurisdictional facts be established" and "demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt*, 298 U.S. at 189.[3]

12.    In *Leite*, the Ninth Circuit held that "[a] 'factual' attack . . . contests the truth of the . . . factual allegations, *usually by* introducing evidence outside the pleadings." *Leite*, 749 F.3d at

---

[2] While 3M suggests that the evidentiary burden set forth in *Meadows* is exclusive to criminal cases, nothing in *Meadows* actually says that. In fact, the three cases *Meadows* cites to for its "competent proof" language (*United Food*, *McNutt*, and *Leite*) are ***all civil cases***.

[3] *Cf. Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1210 (11th Cir. 2007) (enforcing removing party's burden of establishing removal jurisdiction "by a preponderance of the evidence" even in the "naked pleading context" where neither party has offered extrinsic evidence).

1121 (emphasis added). While the *Leite* plaintiffs raised a "factual" attack through the submission of "extensive evidence outside the pleadings," nothing in *Leite* suggests that the plaintiff's presentation of evidence was *necessary* to raise a "factual" attack and trigger the removing party's burden of "competent proof." *See id.* at 1122.

13.    Therefore, Savannah is not required to introduce extrinsic evidence in order to raise a "factual" challenge to 3M's jurisdictional allegations and trigger 3M's burden of "competent proof"; rather, all Savannah must do is make "a reasoned argument as to why any assumptions on which [3M's jurisdictional allegations] are based are not supported by evidence."[4]

14.    Savannah has done just that, challenging 3M's factual assertions through "reasoned argument" that 3M's grounds for removal are not supported by competent evidence. *See, e.g.*, Pl.'s Emergency Mot. to Remand, ECF No. 6, at 39–44 (challenging 3M's factual assertion that it manufactured AFFF for the military pursuant to "reasonably precise" specifications and arguing that 3M has failed to establish elements of federal officer removal as a result); Pl.'s Mem. in Supp. of Mot. to Remand, ECF No. 6-3, at 2 ("Notably, 3M offers no evidence that it even supplied AFFF used at these locations."); *Id.* at 18–24 (challenging 3M's factual assertion that it manufactured AFFF for the military pursuant to "reasonably precise" specifications); Pl.'s Reply in Supp. of Mot. to Remand, ECF No. 62, at 10–14 (arguing that 3M has failed to provide "competent proof" under *Meadows*).

---

[4] *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 700–01 (9th Cir. 2020) (internal quotations omitted) ("[Plaintiff] did not introduce evidence outside the pleadings. A factual attack, however, need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence. . . Because [Plaintiff] contest[ed] the truth of the [defendant's] factual allegations] . . . [the defendant] had the burden of supporting its' jurisdictional allegations with competent proof").

**B. Even if Savannah Was Required to Introduce Extrinsic Evidence in Order to Raise a "Factual" Attack and Trigger 3M's Burden of "Competent Proof," Savannah Has Made That Showing.**

15.    This Court invited the parties to submit supplemental briefing to answer the following question: "If the Court were to hold that the *Meadows* standard as adopted from *Leite*, 749 F.3d at 1121, requires a plaintiff to not only contest the truth of the removing defendant's factual allegations but also introduce extrinsic evidence to do so, what evidence satisfies this burden?" (ECF No. 75, at 2.)

16.    In *Leite*, the plaintiff's factual attack involved the submission of documents outside the pleadings, "including military specifications, technical manuals, warning label guides, and deposition excerpts." *Leite*, 749 F.3d at 1122.

17.    In the related context of motions to dismiss for lack of subject matter jurisdiction, the Eleventh Circuit has held that a "factual" attack may also be initiated through matters outside the pleadings, "such as testimony and affidavits." *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

18.    To the extent Savannah was required to cite extrinsic evidence to raise a "factual" attack on 3M's removal and trigger its burden of "competent proof," Savannah has done so.

19.    First, Savannah contested 3M's factual assertion that Savannah's *present-day* PFAS contamination "plausibly resulted at least in part from the use, storage, and/or disposal of PFAS-containing aqueous film-forming foams ("AFFF") that 3M and others developed and sold to the U.S. military," *see* Notice of Removal, ECF No. 1, ¶ 2, by citing documents showing that 3M has not manufactured *any* "foam fluorosurfactants"—including AFFF sold to the military—since the fall of 2001, and that even before then, all of 3M's AFFF (of which "MilSpec AFFF" was just a

portion) accounted for less than 1% of 3M's PFOS-based product sales, *see* Pl.'s Mem. in Supp. of Mot. to Remand, ECF No. 6-3, at 5 (citing ECF No. 6-4, at 5; ECF No. 6-5, at 21).

20.     Second, Savannah contested 3M's factual allegations supporting its "acting under" and "colorable federal defense" arguments by citing to the AFFF MDL Court's factual findings on summary judgment, which were based on an extensive factual record complete with testimony, affidavits, and documents from 3M, the federal government, and others. *See, e.g.*, Pl.'s Mem. in Supp. of Mot. to Remand, ECF No. 6-3, at 18–24; Pl.'s Reply in Supp. of Mot. to Remand, ECF No. 62, at 12–14 (citing *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357 (D.S.C. Sept. 16, 2022)).

21.     3M may argue that the AFFF MDL Court's factual findings should not count as "extrinsic evidence" for purposes of launching a "factual" attack on 3M's removal theory. First, as explained above, it is not necessary for Savannah to introduce *any* extrinsic evidence in order to maintain a "factual" attack on removal jurisdiction—it is enough that Savannah contests the truth of those allegations through "reasoned argument." *See Harris*, 980 F.3d at 700. Second, the AFFF MDL Court's factual findings relied in large part on documents that 3M itself has cited to in *this case*.[5] And finally, and to remove any doubt as to the procedural validity of Savannah's "factual" attack on 3M's removal theory, Savannah submits hereto the extrinsic evidence that the AFFF MDL Court itself relied upon in reaching its factual findings as cited in Savannah's remand pleadings. *See* Savannah's Supplemental Evidentiary Submission (Exhibits A–M).

---

[5] *Compare, e.g.*, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *2 (citing various iterations of Mil-F-24385—the military's specification for AFFF), *with* Notice of Removal, ECF No. 1, at 10 n.3 (providing hyperlink to same documents).

**C. Savannah's "Factual" Attack Requires 3M to Support its Factual Assertions with "Competent Proof" and Establish the Elements of Federal Officer Removal "By a Preponderance of the Evidence."**

22.    Because Savannah has contested the truth of 3M's factual allegations, both through "reasoned argument" and "extrinsic evidence," 3M is "obligated to support the factual averments linking [its] conduct and [its] office 'by competent proof.'" *See Meadows*, 88 F.4th at 1348 (citing *United Food*, 30 F.3d at 301; *Leite*, 749 F.3d at 1121–22).

23.    This Court invited the parties to supplement the record to explain "what evidence satisfies this burden." (ECF No. 75, at 1.)

24.    "Competent proof" means "admissible evidence." *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006) ("[A]dmissible evidence" is "what 'competent' proof means."); *see also Fitzer v. Am. Inst. of Baking*, No. CV 209-169, 2016 WL 4223612, at *6 (S.D. Ga. Aug. 9, 2016) (declining to rely on inadmissible evidence to satisfy "competent proof" standard in the context of Rule 12(c) motion).

25.    But even if the admissibility requirements for "competent proof" are relaxed in the context of federal officer removal, both *United Food* and *Leite* make clear that the "competent proof" standard imposes a burden on the removing party to establish the requirements for removal "*by a preponderance of the evidence.*"[6]

---

[6] *United Food*, 30 F.3d at 305 ("Where, as here, jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify its allegations by a preponderance of evidence."); *Leite*, 749 F.3d at 1122 ("Because plaintiffs have raised a factual attack on Crane's jurisdictional allegations, Crane must support its allegations with competent proof. And Crane bears the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction have been met."); *see also Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1250 (10th Cir. 2022) (applying "preponderance of the evidence" standard to federal officer removal).

26.     Other courts in this circuit have also recognized that a defendant removing under the federal officer removal statute "bears the burden of proving proper federal jurisdiction" and, to meet this burden, must "produce facts supporting the existence of federal subject matter jurisdiction *by a preponderance of the evidence*." *See, e.g.*, *Swanstrom v. Teledyne Cont'l Motors, Inc.*, 531 F. Supp. 2d 1325, 1330 (S.D. Ala. 2008) (internal alterations omitted) (emphasis added) (quoting *Hobbs v. Blue Cross Blue Shield of Ala.,* 276 F.3d 1236, 1242 (11th Cir.2001)).[7]

27.     And *Meadows* itself recognizes that, "[i]n determining whether [3M's] proof [i]s competent," this Court is "entitled to . . . weigh competing evidence" and determine whether 3M has "provide[d] sufficient evidence." *See id.*

28.     In the removal context, the Eleventh Circuit has described the "preponderance of the evidence" standard as "[t]he greater weight of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." *Lowery*, 483 F.3d at 1209 (quoting Black's Law Dictionary 1220 (8th ed.2004)).

29.     Put a different way, "[c]ompetent proof means proof to a reasonable probability that jurisdiction exists." *Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (internal quotations omitted).

30.     In sum, 3M bears the burden of "support[ing] its allegations with competent proof" and "proving by a preponderance of the evidence"—*i.e.*, "to a reasonable probability"—that "each of the requirements for subject-matter jurisdiction has been met." *See id.*; *Grosch*, 2023 WL 5993548, at *2 (*quoting* Leite, 749 F.3d at 1121–22) (granting remand of case removed by AFFF

---

[7] *See also Halford v. Honeywell Int'l, Inc.*, No. 1:14-CV-3853-LMM, 2015 WL 13106576, at *2 (N.D. Ga. Apr. 20, 2015); *REVA, Inc. v. HealthKeepers, Inc.*, No. 17-24158-CIV, 2018 WL 3520826, at *2 (S.D. Fla. July 20, 2018).

manufacturer based on failure to establish federal officer elements by a preponderance of the evidence). And 3M has not met that burden here.

> **D. 3M Has Not Supported its Factual Assertions with "Competent Proof" or Established the Elements of Federal Officer Removal "By a Preponderance of the Evidence."**

31.     Regardless of how 3M's burden of "competent proof" is triggered—whether by Savannah's "reasoned argument" or "extrinsic evidence"—3M has failed to meet its burden.

32.     3M's theory for removal can be broken down into five (5) general factual assertions:

- *First*, 3M asserts that—until about 2001—it manufactured AFFF for the U.S. government pursuant to "rigorous" and "reasonably precise" design specifications, *i.e.*, "MilSpec AFFF,"

- *Second*, 3M asserts that—in the 1990s—3M's MilSpec AFFF wound up at Fort Gordon in Augusta, and possibly at the Savannah and Augusta Airports,

- *Third*, 3M asserts that the military used 3M's MilSpec AFFF at these sites,

- *Fourth*, 3M asserts that the use of 3M's MilSpec AFFF at these sites caused the discharge of 3M's PFAS into the Savannah River,

- *Fifth*, 3M asserts that PFAS from 3M's MilSec AFFF used at these sites could be impacting Savannah's drinking water today.

(*See generally* Notice of Removal, ECF No. 1, ¶¶ 2–3, 26–36, 41, 44, 49–51.)

33.     3M has not supplied "competent proof" supporting any of these factual premises, and it has not established the elements of federal officer removal "by a preponderance of the evidence":

- *First*, the AFFF MDL Court already found on an extensive factual record that—as a matter of law—the MilSpec for AFFF is not a "reasonably precise" design specification. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *8.

   While 3M claims that its "MilSpec AFFF was *designed* and *manufactured* according to DoD military specifications" (NOR ¶ 44), the original custodian of MIL-F-24835 (the "MilSpec" of "MilSpec AFFF") testified that the specification

for AFFF was merely a "performance spec," not a design specification. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *6. And while 3M's counsel suggested during the hearing on this matter that "there was a lot of interaction between the military and 3M about the content of the chemical compound, the makeup, what it was," *see* ECF No. 71, at 34:15–18, the Navy's MilSpec AFFF custodian said pretty much the exact opposite: "***the way we've always looked at it was it was up to each manufacturer to come up with his own magic witch's brew to meet the performance requirements.***" *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *6 (emphasis added).

In fact, 3M treated its AFFF "formulations as proprietary information," and the Navy's lead AFFF qualifier did not even learn "that PFOS was the fluorosurfactant used in 3M's AFFF" until years after 3M claims to have quit selling AFFF to Fort Gordon. *See id.* at *7. Even in recent court filings, the federal government has not agreed with 3M's factual assertions, stating in response to a request for admission that the "performance specification" for MilSpec AFFF was used "***to give manufacturers the greatest flexibility as to how they would meet the AFFF MilSpec's requirements***." *Id.* at *6 (emphasis added).

- *Second*, even if the Navy is wrong and 3M is right, and 3M did historically supply AFFF to the U.S. military pursuant to "reasonably precise" design specifications, 3M has not supplied *any* proof—much less "competent proof"—that it actually supplied MilSpec AFFF to any location relevant to its own theory of removal, *i.e.*, Fort Gordon, or the Savannah or Augusta Airports.

- *Third*, even if 3M did historically supply MilSpec AFFF to those locations, 3M has not shown "by a preponderance of the evidence" that its MilSpec AFFF was ever actually *used* at those locations. Simply because AFFF was used at those sites does not mean that *3M's MilSpec* AFFF was used at those sites. This is particularly problematic for 3M because it was not the only manufacturer/supplier of AFFF to the military—***in fact, one of the documents that 3M itself has put into the record reveals that an entirely different manufacturer (Chemguard) supplied AFFF to Fort Gordon as recently as 2016***.[8] And, of course, 3M cannot remove this case to federal court based on someone else "acting under" a federal officer.

- *Fourth*, even if 3M's MilSpec AFFF was historically supplied to and used at these locations, 3M has not shown "by a preponderance of the evidence" that *3M's* MilSpec AFFF was ever *discharged* into waterways upstream from Savannah's drinking water intake.

---

[8] *See* Arcadis U.S. Inc., *Final Preliminary Assessment and Site Inspection of Per- and Polyfluoroalkyl Substances, Fort Gordon, Georgia*, at 14 (Nov. 2021), cited in 3M Notice of Removal, ECF No. 1, ¶ 31.

- *Fifth*, even if 3M's MilSpec AFFF was *historically* used and discharged into waterways upstream from Savannah's drinking water intake, 3M has not provided "competent proof" showing that its MilSpec AFFF is *continuing* to impact Savannah's water today.

34.    Ironically, the evidence that would have been easiest for 3M to submit is also the one whose absence rings loudest.

35.    In its Notice of Removal, 3M boasted that it had "sales records" showing that it supplied to MilSpec AFFF to the Augusta Airport—but it did not actually put them in the record. (Notice of Removal, ECF No. 1, ¶ 32.)

36.    In its Motion to Remand, Savannah called 3M out on the lack of evidence:

3M then claims that this "MilSpec AFFF" was used at and discharged from the Fort Gordon Military Reservation in Augusta, Georgia, the Augusta Regional Airport, and/or the Savannah International Airport. Id. ¶¶ 30–33. 3M then asserts that discharges of "MilSpec AFFF" from these installations are at least partially responsible for the PFOS and PFOA contaminating Savannah's drinking water. Id. ***Notably, 3M offers no evidence that it even supplied AFFF used at these locations.***

(Pl.'s Mem. in Supp. of Mot. to Remand, ECF No. 6-3, at 2) (emphasis added).

37.    Rather than simply attach those records in its Response in Opposition, 3M doubled down on its approach of citing—but not actually submitting—these mysterious sales records:

Sales records show that 3M historically supplied the Augusta Regional Airport with MilSpec AFFF. . . . Sales records also show that 3M directly supplied MilSpec AFFF to Fort Gordon.

(3M Response, ECF No. 55, at 7.)

38.    Noticing a trend, Savannah's Reply directly challenged 3M's lack of proof on this fundamental issue once again:

Here, 3M has offered *no proof* and *zero evidence* that it actually supplied any MilSpec AFFF to the military installations identified in its Notice of Removal. . . . This is a critical omission, as 3M was not the only supplier of "MilSpec AFFF" to the U.S. military. . . . Therefore, under *Meadows*, even if 3M could unilaterally inject "MilSpec AFFF" into this case for removal purposes, it has failed to meet its

burden of providing "competent proof" and "sufficient evidence" that it actually supplied "MilSpec AFFF" to any military installations relevant here, and remand is warranted as a result.

(Pl.'s Reply in Supp. of Mot. to Remand, ECF No. 62, at 10–11.)

39.     Even with briefing closed, 3M still had the opportunity to introduce this evidence during the hearing on this matter. 3M declined that opportunity. (*See* ECF No. 71, at 30–32.)

40.     But, perhaps most shocking, 3M had eleven (11) days after the hearing on this matter to supplement the record with additional evidence, yet it still refuses to provide the sales records that 3M has already stated on the record it possesses. (*See* 3M Supp. Resp., ECF No. 80.)

41.     Why is that? Why has 3M resisted so strongly the ample opportunities to provide these sales records? Perhaps it is because the contents of these records actually undermine 3M's factual arguments. The problem is that Savannah—and more importantly this Court—has no way to tell without actually seeing those records. But regardless of the hypothetical contents of those records, 3M has a burden of supporting its factual allegations through "competent proof" and "by a preponderance of the evidence," yet it still has offered *no proof* and *zero evidence* that it actually supplied MilSpec AFFF to any military site relevant to this case.

42.     Moreover, even if this Court is to take 3M's word for it that it supplied AFFF to the relevant military sites, 3M also has made zero showing that its AFFF was actually *used* at those locations—much less used, then discharged into the Savannah River, and then discharged at quantities and/or frequencies capable of continuing to impact Savannah's water supply today. And it is not enough for 3M to simply assert that AFFF generally was used at those military sites—the question is not whether any manufacturers' AFFF has been used at those sites, but whether 3M has offered "competent proof" that *3M's MilSpec* AFFF was used and discharged there.

43.     In other words, even assuming that 3M's noticeably absent sales records says what 3M says they do, 3M has—at best—shown that *3M* supplied MilSpec AFFF to Fort Gordon in the 1990s and that Fort Gordon has used *someone's* AFFF at various times since then. But 3M does nothing to connect those two things; it does not provide "competent proof" that *3M's* MilSpec AFFF was used and discharged at Fort Gordon. 3M does not establish "by a preponderance of the evidence" that its MilSpec AFFF is impacting Savannah's water.

44.     3M attempts to fill in the gaps through its hired expert's self-serving declaration, but this is not "competent proof" that *3M's MilSpec* AFFF is contributing to PFAS contamination of Savannah's drinking water. 3M even admits that this declaration is focused broadly on the issue of whether *any* AFFF (whether or not produced by 3M and whether or not supplied to the U.S. military) is impacting Savannah's water. *See* 3M Resp. ECF No. 55, at 7 n.4 (admitting that "the Declaration discusses other locations where AFFF was used that (while relevant to transfer) are not necessarily relevant to removal to the extent that 3M does not presently have evidence that the AFFF was MilSpec AFFF"). In other words, that declaration does not even provide answers to the factual questions underpinning 3M's removal theory—whether AFFF that *3M* manufactured for the military pursuant to reasonably precise specifications is impacting Savannah's water.

45.     If 3M really wanted to prove up its factual assertions, it could simply provide a declaration from the federal officers that 3M says it "acted under"; after all, that is exactly the type of "competent proof" found to be sufficient in *Leite*. 749 F.3d at 1120 (discussing affidavits from military personnel regarding Navy's procurement policies and detailed specifications).

46.     The reason 3M cannot do that here is that the federal officers that 3M purports to have "acted under" have directly contradicted many of 3M uncited factual assertions:

| **What 3M Says** | **What the U.S. Military Says** |
|---|---|
| "***Naval Sea Systems Command participated in the <u>design</u> of MilSpec AFFF</u>*." (Notice of Removal, ECF No. 1, ¶ 49) (emphasis added) | "Robert Darwin, the former Director of the Fire Protection Division of NAVSEA and the original custodian of MIL-F-24835, testified that '***the way we've always looked at it was it was up to each manufacturer to come up with his own <u>magic witch's brew</u> to meet the performance requirements***.'" *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *6 (emphasis added). |
| "3M acted in accordance with ***<u>detailed specifications</u>***, promulgated by Naval Sea Systems Command, ***that <u>govern AFFF formulation</u>***, performance, testing, storage, inspection, packaging, and labeling." *Id.* ¶ 41. | "[A]s John Farley, lead AFFF qualifier at the NRL testified, all ***AFFF manufacturers treated their <u>formulations as proprietary information</u>*** and he ***<u>did not learn until 2000</u> that PFOS was the fluorosurfactant used in 3M's AFFF***." *Id.* at *7. |
| "The ***<u>design, manufacture, and sale</u>*** of MilSpec AFFF is ***governed by <u>rigorous military specifications</u>*** created and administered by Naval Sea Systems Command, part of the DoD." *Id.* ¶ 26. | "In response to a request to admit, the United States admitted that a '***<u>performance specification</u> was used*** from November 21, 1969 until May 7, 2019 ***to give manufacturers the <u>greatest flexibility</u>*** as to how they would meet the AFFF MilSpec's requirements and to promote competition both on performance and price.' (Dkt. No. 2063-4, Resp. 3)." *Id.* at *6. |

47.     In short, 3M's factual theory is not supported by "competent proof," but instead asks the Court to simply trust 3M and stack implausibilities upon implausibilities. There is no proof—much less "competent proof"—that 3M sold AFFF to a military base at issue in this case. And even if 3M's shadow "sales records" say what 3M says they do, 3M has not shown "by a preponderance of the evidence" that its shipments of AFFF to Fort Gordon in 1991 and 1994 are in any way causing or contributing to Savannah's *present-day* PFAS contamination. And these are just the holes in 3M's factual theory that AFFF is contributing to Savannah's PFAS pollution. 3M has also failed to show "by a preponderance of the evidence" (1) that it was "acting under" the U.S. government when it manufactured and supplied MilSpec AFFF and (2) that it can assert a colorable federal defense.

48.   3M has not established the elements of federal officer removal "by a preponderance of the evidence," and therefore remand is warranted.

## II.   Remand is Also Warranted Under Savannah's "Facial" Attack

49.   Even assuming that every factual assertion in 3M's removal pleadings is true, remand of this case is still necessary under Savannah's "facial" attack.

### A.   3M's Manufacture and Supply of MilSpec AFFF is Not An "Action for Which 3M is Being Sued," Much Less the "Heart" or "Gravamen" of Savannah's Case Against 3M.

50.   Even if 3M had concretely established that MilSpec AFFF it supplied to the military is currently contaminating Savannah's drinking water, that still does not change the fact that 3M's manufacture and supply of MilSpec AFFF is not one of the "actions for which [3M] is being sued." *See Town of Pine Hill*, 2025 WL 733100, at *5 (citing *Caver*, 845 F.3d at 1142).

51.   And 3M's manufacture and supply of MilSpec AFFF is certainly not the "heart" or "gravamen" of Savannah's claims against 3M. *See id.* ("At the very least, the fact that the complaint expressly disclaims any damages or cause of action based on PFAS-containing AFFF lends further support to the determination that 3M's manufacture for and supplying of AFFF to the U.S. military are not at the 'heart' of Pine Hill's claims against 3M.").

52.   3M attempts to re-interpret its "act" or "charged conduct" with a sweepingly broad brush ("the 'heart' of 3M's alleged conduct was manufacturing and supplying PFAS and PFAS-containing products that have allegedly contaminated Plaintiff's water supply") and then claim that "some" of that conduct was done under federal authority ("3M plausibly alleged that some of that conduct was done pursuant to federal authority"). (3M Response, ECF No. 55, at 18.)

53.   But this Court is not "required to accept [3M's] interpretation of 'act' at face value," and even if "some" of 3M's "charged conduct" was done pursuant to federal authority, 3M "must

be 'specific and positive' in showing that [its] *charged conduct 'was* **confined to** *[its] acts [under]*
*an officer*." *See Meadows*, 88 F.4th at 1344–48 (emphasis added). 3M's entire theory of removal,
even if true, fails to make that showing under *Meadows*.

      **B.   Even 3M's Version of the Facts Does Not Plausibly Establish a Federal**
             **Government Contractor Defense.**

    54.    Even taking all of 3M's factual assertions as true, 3M's government contractor
defense also has a plausibility problem.

    55.    3M does not dispute that the AFFF MDL Court found "as a matter of law that the
AFFF MilSpec is not a reasonably precise specification under the first prong of *Boyle*." *In re*
*Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *8. 3M simply says that
it "disagrees with that conclusion." (3M Resp., ECF No. 55, at 24.)

    56.    If that finding as a matter of law is adopted here, then 3M cannot dispute that the
*only* way 3M can establish the first prong of *Boyle* (and therefore have any chance at a "colorable
federal defense") is by showing "the government's continuous use of the product . . . with ***full***
***knowledge*** of its defects and risks." *Id.* (emphasis added) (quoting *In re Aqueous Film-Forming*
*Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *6–8).

    57.    The issue for 3M is that—taking all of its factual assertions as true—it has not sold
any MilSpec AFFF to a military site relevant to this jurisdictional inquiry since *1994*, four (4) years
before 3M began making "belated disclosure[s] of more than 1,200 studies" to the EPA related to
PFOS and PFOA, and six (6) years before the Navy even learned that PFOS was in 3M's MilSpec
AFFF. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *7, *11.

    58.    And while 3M internally reported in 1998—four (4) years after its last purported
sale of AFFF to Fort Gordon—that "PFOS-based chemistry . . . [are] **VERY** persistent and thus

insidiously toxic," and that "a 'safe' level of PFOS in the blood [is at or above] 1.05ppb,"[9] 3M simultaneously assured the public and the government that it did not "believe that any reasonable basis exists to conclude that PFOS 'presents a substantial risk of injury to health or the environment.'" *See id.* at *9. Notably, 3M's 1998 internal reports were *never* disclosed to the government and were only revealed through discovery in litigation. *Id.*

59.    On this factual record, 3M cannot plausibly establish that the government had "full knowledge" of the risks associated with 3M's PFOS-containing AFFF, and therefore 3M cannot plausibly establish the first prong of the government contractor defense. As a result, 3M has not plausibly asserted a colorable federal defense, even when taking 3M's version of the facts as true.

## **REQUEST FOR RELIEF**

Savannah respectfully requests that the Court enter an order remanding this action to state court. Furthermore, Savannah respectfully requests that the Court mail any remand order to the state court simultaneous to the issuance of the order to prevent an automatic stay of state court proceedings pending an appeal by 3M. *See City of Martinsville, Virginia v. Express Scripts, Inc.*, 128 F.4th 265 (4th Cir. 2025) (defendant's filing of notice of appeal prior to federal court's mailing of remand order to state court divests federal court of jurisdiction to mail remand order).

Respectfully submitted this 15th day of April, 2025.

**OFFICE OF THE CITY ATTORNEY**

2 East Bay Street                    _/s/ R. Bates Lovett_____
City Hall, 3rd Floor GA 30161        R. BATES LOVETT
Savannah, GA 31401                   Georgia Bar No. 459568
Phone: 912-525-3131                  **Counsel for Plaintiff**
blovett@savannahga.gov

---

[9] At the same time, 3M found PFOS "in the blood of the general population" at concentrations about 30x this "safe" level. *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *9.

**HARRIS LOWRY MANTON LLP**

410 East Broughton Street
Savannah, Georgia 31401
Telephone: (912) 651-9967
Facsimile: (912) 651-1276
jeff@hlmlawfirm.com
steve@hlmlawfirm.com
jed@hlmlawfirm.com
molly@hlmlawfirm.com
cdonahue@hlmlawfirm.com

 /s/ Jeffrey R. Harris
JEFFREY R. HARRIS
Georgia Bar No. 330315
STEPHEN G. LOWRY
Georgia Bar No. 460289
JED D. MANTON
Georgia Bar No. 868587
MADELINE E. MCNEELEY
Georgia Bar No. 460652
COLE F. DONAHUE
Georgia Bar No. 632966
**Counsel for Plaintiff**

**FRANKLIN LAW LLC**

2919 River Drive
Thunderbolt, Georgia 31404
Phone: 912-335-3305
rebecca@franklinlawllc.com

 /s/ Rebecca Franklin Harris
REBECCA FRANKLIN HARRIS
Georgia Bar No. 141350
**Counsel for Plaintiff**

**FRIEDMAN, DAZZIO & ZULANAS, P.C.**

3800 Corporate Woods Drive
Birmingham, AL 35242
Phone: 205-278-7000
jfriedman@friedman-lawyers.com
mconn@friedman-lawyers.com
mgitschier@friedman-lawyers.com
ewright@friedman-lawyers.com

 /s/ Matt Conn
JEFF FRIEDMAN
MATT CONN
MADISON GITSCHIER
ETHAN WRIGHT
**Counsel for Plaintiff**
***(Admitted Pro Hac Vice)***

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to all counsel of record.